J-S84005-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DARRYL PALMER, | |
| Appellant | No. 3086 EDA 2014 |

Appeal from the Judgment of Sentence of September 29, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0013136-2013

BEFORE:  OLSON, SOLANO and FITZGERALD,* JJ.

MEMORANDUM BY OLSON, J.:                **FILED January 12, 2017**

Appellant, Darryl Palmer, appeals from the judgment of sentence entered on September 29, 2014 in the Court of Common Pleas of Philadelphia County.  We affirm.

At the conclusion of a three-day trial on April 11, 2014, a jury found Appellant guilty of carrying a firearm on a street or public place in Philadelphia (18 Pa.C.S.A. § 6108) and the trial court found Appellant guilty of persons not to use or possess firearms (18 Pa.C.S.A. § 6105).  Thereafter, on September 29, 2014, the court sentenced Appellant to an aggregate punishment of six to 13 years' incarceration.[1]

_____

[1] Appellant received five to 10 years' imprisonment for persons not to possess firearms and one to three years for carrying a firearm on the streets of Philadelphia.


* Former Justice specially assigned to the Superior Court.

Appellant filed a timely notice of appeal on October 28, 2014. On March 26, 2015, Appellant timely complied with the trial court's order to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925. With leave of court, Appellant later supplemented his concise statement with filings submitted on March 27, 2015 and November 10, 2015. This matter is now ripe for consideration.

Appellant raises a single question for our review:

> Was not the evidence insufficient to support Appellant's [firearms convictions], where the verdict rests upon unreliable evidence, speculation, and conjecture?

Appellant's Brief at 3.

Appellant argues on appeal that his convictions rest upon insufficient evidence that he possessed a firearm during the incident in question. Specifically, Appellant contends that the testimony of Ronald Leach, the Commonwealth's eyewitness to the relevant events, was unbelievable and that 911 recordings of Leach's reports to police constituted unreliable hearsay. Appellant therefore reasons that the Commonwealth needed to prove constructive possession, which it failed to do since the evidence merely showed Appellant in proximity to a firearm that was equally accessible to others. These claims are meritless.

Our standard of review for a sufficiency challenge is well settled.

> As a general matter, our standard of review of sufficiency claims requires that we evaluate the record "in the light most favorable to the verdict winner giving the prosecution the benefit of all

reasonable inferences to be drawn from the evidence." ***Commonwealth v. Widmer***, 744 A.2d 745, 751 (Pa. 2000). "Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt." ***Commonwealth v. Brewer***, 876 A.2d 1029, 1032 (Pa. Super. 2005). Nevertheless, "the Commonwealth need not establish guilt to a mathematical certainty." ***Id.***; ***see also Commonwealth v. Aguado***, 760 A.2d 1181, 1185 (Pa. Super. 2000) ("[T]he facts and circumstances established by the Commonwealth need not be absolutely incompatible with the defendant's innocence"). Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances. ***See Commonwealth v. DiStefano***, 782 A.2d 574, 582 (Pa. Super. 2001).

The Commonwealth may sustain its burden by means of wholly circumstantial evidence. ***See Brewer***, 876 A.2d at 1032. Accordingly, "[t]he fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence." ***Id.*** (*quoting* ***Commonwealth v. Murphy***, 795 A.2d 1025, 1038–1039 (Pa. Super. 2002)). Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld. ***See Brewer***, 876 A.2d at 1032.

***Commonwealth v. Rahman***, 75 A.3d 497, 500 (Pa. Super. 2013) (parallel citations and quotation omitted).

We have carefully reviewed the certified record, the submissions of the parties, and the opinions of the trial court. Based upon our review, we conclude that the trial court has adequately and accurately addressed the contentions raised by Appellant and we adopt its sufficiency analysis as our

own. In particular, we agree with the trial court's determination that Leach's testimony, together with the 911 recordings, provided the jury with sufficient proof upon which to find, beyond a reasonable doubt, that Appellant possessed a firearm on the date in question. *See* Trial Court Opinion, 6/30/15, at 10-11. Moreover, we decline Appellant's invitation to reconsider the weight and credibility of the evidence adduced by the Commonwealth, as our standard of review forbids such an undertaking. Accordingly, we direct the parties to include a copy of the trial court June 30, 2015 opinion with all future filings relating to our disposition of this appeal.

Judgment of sentence affirmed.
Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/12/2017

IN THE COURT OF COMMON PLEAS
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CRIMINAL TRIAL DIVISION

COMMONWEALTH : CP-51-CR-0013136-2013

FILED

vs.

JUN 30 2015

Criminal appeals Unit
First Judicial District of PA

DARRYL PALMER : SUPERIOR COURT
3086 EDA 2014

OPINION

BRINKLEY, J. JUNE 30, 2015

Defendant Darryl Palmer was found guilty of two violations of the Uniform Firearms Act (VUFA): Carrying a Firearm on a Street or Public Place in Philadelphia, §6108; and Carrying a Firearm as a Person Not to Use or Possess Firearms, § 6105. This Court sentenced Defendant to an aggregate term of 6 to 13 years state incarceration. Defendant appealed this judgment of sentence and raised the following issues on appeal: (1) whether the evidence was sufficient to find Defendant guilty of violating VUFA § 6108 and § 6105; (2) whether the trial court properly permitted the Commonwealth to introduce into evidence shotgun casings recovered in a lot adjacent to Defendant's brother's house; and (3) whether the trial court properly permitted the Commonwealth to tell the jury in its closing argument that lack of financial resources prevented the police department from conducting certain testing. This Court's judgment of sentence should be affirmed.

## PROCEDURAL HISTORY

On September 5, 2013, Defendant was arrested after a neighbor called the police and reported an argument with a gunshot fired outside his house. Defendant was charged with aggravated assault, possession of an instrument of crime (PIC), carrying a firearm on the public streets of Philadelphia (VUFA § 6108) and carrying a firearm as a person not to use or possess firearms (VUFA § 6105).

On April 9, 2014, Defendant appeared before this Court for a trial by jury. On April 11, 2014, the jury found Defendant guilty of carrying a firearm on the public streets of Philadelphia, VUFA § 6108. The jury found him not guilty of aggravated assault and PIC. Following the verdict, counsel stipulated that Defendant was statutorily prohibited from carrying a firearm. As a result, this Court found Defendant guilty of carrying a firearm as a person not to use or possess firearms, VUFA § 6105.

On September 29, 2014, after review of a mental health evaluation and presentence investigation report, this Court sentenced Defendant to 5 to 10 years state incarceration on the VUFA § 6105 charge, and 1 to 3 years state incarceration on the VUFA §6108 charge, to run consecutively for an aggregate term of 6 to 13 years state incarceration. Defendant was ordered to receive dual diagnosis and anger management treatment, earn his GED, obtain job training, and upon release, seek and maintain employment. On October 28, 2014, Defendant appealed this judgment of sentence to the Superior Court. On January 15, 2015, this Court ordered that defense counsel file a Concise Statement of Errors Complained of on Appeal in accordance with Pa. R.A.P. 1925(b). Defense counsel filed a Petition to Extend Time to File Concise Statement of Errors based upon the stenographer's failure to transcribe counsel's opening and closing statements as requested. All notes of testimony from the trial were completed and uploaded to

2

the Court Reporting System on March 3, 2015. On March 12, 2015, this Court granted defense counsel's request for an extension of time and defense counsel filed a Statement of Errors on March 26, 2015. An Amended Statement of Errors was filed *nunc pro tunc* on March 27, 2015.

## FACTS

From April 9-11, 2014, Defendant appeared before this Court for a jury trial. Ronald Leach ("Leach") testified first for the Commonwealth. Leach stated that on the morning of September 5, 2013, he was asleep in his Kensington home on the 1900 block of East Clearfield when he was awakened by the sounds of men arguing in loud voices outside. Leach looked outside his bedroom window and saw three men, including Defendant, another black male (later identified as Defendant's brother Dante Geary), and an unknown Latino male (later identified as Joshua Perez), standing and shouting next to Leach's car. Geary and Perez had emerged from the house directly across the street from Leach's. Defendant was holding a large shotgun in a "pistol grip." Leach saw Perez retrieve an item from his right-hand pocket, stick it on the front right tire of Leach's car, and then back away. A few seconds later, Perez went back, picked up the object, and put it inside his right front sock. Perez crossed the street, followed by Geary and Defendant. Defendant approached Perez and hit him with the butt of the shotgun. Leach turned away from his window and then heard a single gunshot. He immediately called the police and described the Defendant, the gunman, as a heavy-set black male wearing a white shirt. Leach testified that he called the police again after they had arrived on the scene when he noticed that Perez had returned to the area and was sitting on a bicycle at the end of the street, watching the police activity. Leach later met with police detectives and gave a statement. He also looked at photographs and identified Defendant, Geary and Perez as the men who were outside his home arguing. Leach told detectives that Defendant had been holding a shotgun and that he had "butt-

3

stroked" Perez with the gun. Leach testified that a few days after the shotgun incident, Geary approached him and asked, "What did you tell the police about my brother"? Leach further testified that on the morning of trial, Geary sat in a parked car outside of Leach's house and said, "I need to talk to you," as Leach walked past. Leach further testified that he had seen Geary almost daily since the incident happened but that Geary had spoken to him only on those two occasions. (N.T. 4/9/14, 26-72).

Police Officer Phillip Lewis ("Officer Lewis") testified next for the Commonwealth. He testified that on September 5, 2013, he was carrying out his duties as a routine patrol officer with his partner Officer Benz when they received information over the police radio that there was a man on Clearfield Street with a shotgun. When they arrived on the scene, Officer Lewis observed two black males arguing. He identified one of those men as Defendant. Officer Lewis testified that he and Officer Benz detained the two men. Defendant told police that he had been in an argument with his brother that morning. One of the men told the officers that he lived at 1916 East Clearfield Street, so Officer Lewis walked towards the house. Adjacent to the house, he observed an empty lot with a table set up. On the table, he observed drug packaging paraphernalia. He also observed red shotgun shells on the table and ground. As Officer Lewis was examining these items, he stepped on a hard object on the ground covered by a blue plastic tarp. He lifted the tarp and observed a shotgun sleeve marked "Cabela's," a well-known hunter's outfitting company. Officer Lewis testified that he opened the sleeve and observed a gray and black Moss shotgun. Inside the gun, there were two live rounds and one spent round, meaning that the gun had been fired. Defendant and his brother were arrested and transported to the police station for processing. Officer Lewis testified that both Defendant and his brother refused to press criminal charges against the other. Officer Lewis completed a 75-48 form, and in it,

4

described Defendant as a heavy-set black mail wearing a white shirt and blue jeans. (N.T. 4/9/14, p. 109-136).

Police Officer Christopher Benz testified next for the Commonwealth. He stated that on September 5, 2013, he and his partner, Officer Lewis, responded to a report of a man with a shotgun on the 1900 block of Clearfield Street. He detained Defendant, who was wearing a white shirt, and Defendant's brother Donte Geary, who was wearing a blue shirt. (N.T. 4/10/14, p. 4-10).

Next, Police Officer Zhao Chen testified that he responded to a call on the 1900 block of Clearfield Street. From underneath a bicycle next to 1916 East Clearfield Street, Officer Chen recovered a bundle of 14 clear plastic baggies filled with smaller blue glassine paper stamped "heat" containing a white substance, later identified as heroin. Officer Chen detained a Hispanic man, Joshua Perez, wearing a black shirt and green shorts, who seemed very interested in the situation and did not disburse when asked to do so by police. Officer Chen asked Perez a few questions, ran his information through the computer, and then released him without arrest. Later, Officer Chen interviewed Mr. Leach and spoke with him about Perez. Id. at 10-18.

Police Officer Marco Padilla testified next. He stated that he transported Defendant to the police station for processing and that, as a result, he completed a 229 form. Officer Padilla stated that at the time of Defendant's arrest, he was wearing a white shirt, blue jeans and sneakers. Id. at 25-28.

Next, Detective Dennis Demas testified for the Commonwealth. He stated that he executed a search warrant at 1916 East Clearfield Street, searching for any additional firearms or related evidence. He did not recover any further evidence inside the house; however, he did recover two spent 12-gauge fired shotgun shells from the vacant lot next to the house. Detective

5

Demas stated that he surveyed the area for strike marks but did not locate any. He also looked for functioning video cameras on nearby homes and businesses in the area but was unable to locate any. Id. at 28-40.

On cross-examination, Detective Demas testified that he did not request a gunshot residue test on Defendant's clothing or hands because this was not a case of mistaken identity; Leach positively identified Defendant as the man with the gun. He further testified that he decided not to have the shotgun checked for fingerprints because it was already "contaminated" as several people had touched it. Id. 40-47.

Donte Geary ("Geary") testified next for the Commonwealth. He stated that he lived at 1916 East Clearfield Street with his child's mother and her family. Defendant visited him there "sometimes." On the morning of September 5, 2013, he and Defendant were arguing because Defendant "disrespected" Geary's child's mother, and they were shouting at each other on the sidewalk outside of the house. Geary testified that Perez was outside on the sidewalk, a few houses away, but he was not involved in their disagreement. Geary stated that he and Defendant were about to go their separate ways when the police arrived. Geary testified that Defendant did not have a firearm and there were "no shots fired at all." He continued to deny ever hearing gunshots that morning even after the Commonwealth played the recorded 911 calls from that morning, wherein three separate neighbors on Clearfield Street reported to the police that they heard a gunshot. Geary testified that he did not remember what his brother was wearing that day. He further stated that both his household and the neighbors next door use the vacant lot adjacent to his house. Id. at 58-95.

Next, Joshua Perez ("Perez") testified for the Commonwealth. He stated that he was incarcerated on an unrelated matter and that he had not been threatened or promised anything in

6

exchange for his testimony. He testified that on the morning of September 5, 2013, he was outside smoking a cigarette on a step about a block away from 1900 Clearfield Street, when he heard "a commotion going on" so he rode his bicycle over to investigate. Perez stated that he heard people arguing and then heard a single gunshot. When he arrived at the scene, he saw the police, Defendant and Geary. Perez testified that he circled the block on his bicycle, and as he rode past the second time, the police detained him. Perez testified that the police believed he had a gun but released him shortly thereafter. He further testified that he Geary was his friend but that he only knew Defendant as "Man." He stated that he did not see anyone with a firearm and he could not remember what clothing anyone was wearing. Perez denied that anyone hit him on the head with a shotgun and he denied ever approaching Leach's house. Id. at 98-123.

Next, counsel introduced evidence by way of stipulation by and between counsel. First, counsel stipulated that on September 5, 2013, Defendant did not have a valid license to carry firearms or a valid sportsman's firearm permit. Second, counsel stipulated that the shotgun, two shotgun rounds and one fired shotgun shell were recovered by Officer Lewis, that these were submitted to the Firearms Identification Unit for examination, that the shotgun was test-fired and was operable, and that all three shotgun shells were analyzed and it was determined they were all fired from that particular shotgun. Third, counsel stipulated that the recorded 911 calls and the police radio transmissions were made on the morning of September 5, 2013. Last, counsel stipulated that Officer Chen did not observe any injuries on Joshua Perez when he interacted with him. At the conclusion of stipulations, the Commonwealth published its exhibits to the jury, moved its documents into evidence, and rested. Defense counsel then moved its exhibits into evidence and rested.

After the jury was excused, defense counsel moved for a judgment of acquittal on the charge of aggravated assault. This Court denied the motion, finding that the Commonwealth had met its minimum burden and it was up to the jury to make a credibility determination as to which witnesses' version of events to believe.

The jury returned a verdict of not guilty on the charges of aggravated assault and possession of an instrument of crime. The jury found Defendant guilty of carrying a firearm on the public streets of Philadelphia, VUFA § 6108.

This Court then conducted a waiver trial with respect to the charge of carrying a firearm as a person not to use or possess firearms, VUFA § 6105. Counsel stipulated that Defendant was statutorily ineligible to possess a firearm. The Court found Defendant guilty of this charge.

On September 29, 2014, Defendant appeared before this Court for sentencing. Defense counsel argued that Defendant had a traumatic childhood and had entered the system at 14 years old when he became too difficult for his grandmother to control. Defense counsel recommended concurrent sentences. The Commonwealth argued that Defendant had a long criminal history and that his crimes were escalating in seriousness. He recommended an aggregate sentence of 7 to 14 years incarceration plus one year reporting probation. This Court sentenced Defendant to 5 to 10 years state incarceration on the VUFA § 6105 charge and 1 to 3 years state incarceration on the VUFA § 6108 charge, to run consecutively, for an aggregate sentence of 6 to 13 years state incarceration. This Court ordered that Defendant undergo dual diagnosis treatment and anger management treatment while in custody, earn his GED, and upon release, seek and maintain employment. He was further ordered to pay mandatory court costs at a rate of $25 per month.

8

## ISSUES

I. WHETHER THE EVIDENCE WAS SUFFICIENT FOR THE JURY TO FIND DEFENDANT GUILTY OF CARRYING A FIREARM ON PUBLIC STREETS IN PHILADELPHIA, VUFA 6108 AND CARRYING A FIREARM AS A PERSON NOT TO USE OR POSSESS FIREARMS, VUFA § 6105.

II. WHETHER THE TRIAL COURT ERRED WHEN IT PERMITTED THE COMMONWEALTH TO INTRODUCE INTO EVIDENCE THE SHOTGUN CASINGS RECOVERED BY POLICE IN THE VACANT LOT NEXT TO GEARY'S HOUSE.

III. WHETHER THE TRIAL COURT ERRED IN ALLOWING THE COMMONWEALTH TO REFER IN ITS CLOSING ARGUMENT TO THE CITY'S ECONOMIC CONDITIONS AS A REASON FOR THE POLICE'S FAILURE TO CONDUCT GUNSHOT RESIDUE AND FINGERPRINT TESTING.

## DISCUSSION

I. THE EVIDENCE WAS SUFFICIENT TO SUPPORT DEFENDANT'S CONVICTION FOR CARRYING A FIREARM ON PUBLIC STREETS IN PHILADELPHIA, VUFA § 6108 AND CARRYING A FIREARM AS A PERSON NOT TO USE OR POSSESS FIREARMS, VUFA § 6105.

The evidence adduced at trial was sufficient for the jury to find Defendant guilty of carrying a firearm on public streets in Philadelphia, in violation of section § 6108 of the Uniform Firearms Act; and carrying a firearm as a person not to use or possess firearms in violation of section § 6105 of the Uniform Firearms Act.

### A. Sufficiency of the Evidence

A review of the sufficiency of the evidence to support a conviction requires that the evidence be reviewed in the light most favorable to the Commonwealth as the verdict winner. Commonwealth v. Walter, 2004 PA Super. 147, 849 A.2d 265, 267 (2004) (citing Commonwealth v. Rose, 463 Pa. Super. 264, 344 A.2d 824, 925 (1975)). The Commonwealth is also entitled to all favorable inferences which may be drawn from the evidence. Commonwealth v. Sanchez, 2006 Pa. LEXIS 1833 (2006) (citing Commonwealth v. Collins, 500 Pa. 46, 50, 703

9

A.2d 418, 420 (1997)). Within this framework, the evidence put forth by the Commonwealth will be considered sufficient if it establishes each material element of the crime beyond a reasonable doubt, even if by wholly circumstantial evidence. Commonwealth v. Dargan, 2006 PA Super. 74, 897 A.2d 496, 503 (2006) (citing Commonwealth v. DiStefano, 2001 PA Super 238, 782 A.2d 574, 582 (2001)).

When determining whether the evidence is sufficient to support a guilty verdict, the appellate court must consider all of the evidence actually received at trial. Id. However, the trier of fact is entitled to believe all, part or none of the evidence received at trial, and the appellate court cannot substitute its judgment for that of the fact-finder. Commonwealth v. Frisbie, 2006 PA Super. 430, 889 A.2d 1271, 1274 (2006) (citing DiStefano, 782 A.2d at 574); Commonwealth v. Kim, 2005 PA Super. 383, 888 A.2d 847, 851 (2005) (citing Commonwealth v. Champney, 574 Pa. 435, 832 A.2d 403, 408 (2003)). The facts and circumstances established by the Commonwealth need not eliminate any possibility of the defendant's innocence; rather, any doubt is to be resolved by the fact-finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact could be concluded. Commonwealth v. Lambert, 2002 PA Super. 82, 795 A.2d 1010 (2002) (citing Commonwealth v. Cassidy, 447 Pa. Super. 192, 194, 668 A.2d 1143, 1144 (1995)).

**B. VUFA § 6108 and VUFA § 6105**

Under Pennsylvania law, "[n]o person shall carry a firearm, rifle or shotgun at any time upon the public streets or upon any public property in a city of the first class unless such person is licensed to carry a firearm" or is exempt from licensing. 18 Pa.C.S. § 6108. Lack of a license is not an element of this statutory provision. Commonwealth v. Hopkins, 2000 PA Super 47, ¶ 18, 747 A.2d 910, 917 (Pa. Super. Ct. 2000) (citing Commonwealth v. Ford, 315 Pa. Super. 281,

10

461 A.2d 1281, 1287 (1983). "As with any crime, the factfinder may infer guilt from the totality of the circumstances, so long as the evidence reasonably supports the factfinder's conclusion." Id. "The factfinder's determination that a defendant carried a weapon on a public street in Philadelphia will be affirmed if the evidence of record reasonably supports this conclusion." Id. Last, a person who has been convicted of any offense enumerated in 18 Pa.C.S. § 6105(b) or whose conduct meets the criteria set forth in 18 Pa.C.S. § 6105(c) cannot "possess, use, control, sell, transfer or manufacture [...] a firearm in this Commonwealth." 18 Pa.C.S. § 6105(a)(1).

In the case at bar, Defendant was properly found guilty of violating two sections of the Uniform Firearms Act: carrying a firearm on public streets in Philadelphia, §6108; and carrying a firearm as a person not to possess a firearm, § 6105. At trial, Leach testified that in the early hours of September 5, 2013, he woke up to the sound of men arguing outside his house. He looked out his window and saw Defendant standing on the sidewalk near Leach's car, holding a large shotgun "in a pistol grip." When he turned away from the window, he heard a gunshot and immediately called the police. He described the gunman as a heavy-set black male wearing a white shirt. Later, Leach was interviewed by detectives and identified Defendant in a photo array as the man who had been holding the shotgun. Officer Lewis testified that when he arrived on the scene in response to a radio call about a gunman in the area, he observed Defendant and his brother arguing in front of 1916 Clearfield Street. In a vacant lot adjacent to the house, Officer Lewis recovered a shotgun with two live rounds and one spent round. In his arrest report, Officer Lewis described Defendant as a "heavy-set black male wearing a white shirt and blue jeans." Officer Benz testified that Defendant was wearing a white shirt when he was detained. Officer Padilla testified that he transported Defendant to the police station for processing and that Defendant was wearing a white shirt, blue jeans and sneakers. Last, after the jury found

11

Defendant guilty of carrying a firearm on public streets in Philadelphia, counsel stipulated that Defendant was statutorily prohibited from carrying a firearm.

This evidence was sufficient to sustain Defendant's firearms convictions. The jury heard Leach's eyewitness testimony that Defendant was carrying a shotgun while he was outside on the sidewalk on Clearfield Street. Leach's description of Defendant as a heavy-set black male in a white shirt was recorded repeatedly in written reports by the arresting officers that day. Additionally, although Perez denied seeing anyone with a firearm, he testified that he heard people arguing, followed by a gunshot, and that when he rode his bike over to see what was going on, he saw Defendant and his brother Donte on the sidewalk. From the totality of the circumstances, the jury properly inferred that Defendant was carrying a firearm on a public street in Philadelphia, and, as a result, found him guilty of this charge. Since the jury found him guilty of carrying a firearm, and counsel stipulated that Defendant was statutorily prohibited from carrying firearms, this Court properly found Defendant guilty of carrying a firearm as a person not to use or possess firearms. Accordingly, Defendant's convictions should be affirmed.

**II.    THIS COURT PROPERLY PERMITTED THE COMMONWEALTH TO INTRODUCE INTO EVIDENCE TWO SHOTGUN CASINGS RECOVERED BY POLICE IN THE VACANT LOT.**

This Court properly allowed the Commonwealth to introduce into evidence shotgun casings recovered by police in the vacant lot next to 1916 East Clearfield Street. Defendant argued that the shotgun casings should have been excluded because they "had no probative value and were unduly prejudicial" to Defendant's case. This claim is without merit.

It is well established that the admissibility of evidence is solely within the discretion of the trial court and its decision will not be disturbed on appeal absent an abuse of that discretion. An abuse of discretion is not merely an error of judgment, but is rather the overriding or

misapplication of the law or an exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record. Commonwealth v. Wattley, 2005 PA Super 272, 880 A.2d 682, 685 (2005) (quoting Commonwealth v. Dent, 837 A.2d 571, 577 (PA Super. 2003)). Where the trial court has stated a "reason for its decision, the scope of review is limited to an examination of the stated reason." Commonwealth v. O'Brien, 2003 PA Super 425, 836 A.2d 966, 968 (2003)(quoting Commonwealth v. Horvath, 2001 PA Super 227, 781 A.2d 1243, 1246 (2001)). "A discretionary rule cannot be overturned simply because a reviewing court disagrees with the trial court's conclusion." Id. (quoting Commonwealth v. Cohen, 529 Pa. 552, 605 A.2d 1212, 1218 (1992)). To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party. Commonwealth v. Lopez, 2012 PA Super 161, 57 A.3d 74, 81 (2012) (citing McNanamon v. Washko, 906 A.2d 1259, 1268-69 (Pa.Super.2006)). An evidentiary error of the trial court will be deemed harmless on appeal where the appellate court is convinced, beyond a reasonable doubt, that the error could not have contributed to the verdict. Commonwealth v. DeJesus, 584 Pa. 29, 880 A.2d 608, 614 (2005) (citing Commonwealth v. Story, 476 Pa. 391, 383 A.2d 155, 164-66 (1979)).

It is well settled that all relevant evidence is admissible, except as otherwise provided by law. Pa.R.E. 402. Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence and the fact is of consequence in determining the action. Pa.R.E. 401. The court may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. Pa.R.E. 403.

13

In the case at bar, this Court properly allowed the Commonwealth to introduce the shotgun casings into evidence. At trial, Detective Demas testified that he recovered two spent 12-gauge Winchester shotgun shells from the vacant lot next to 1916 East Clearfield Street. One of the shells was on the table; the other was in the grass. This was the same vacant lot where officers recovered the loaded shotgun itself. The Commonwealth showed Detective Demas photographs of the area and he confirmed where he located each shell casing. Defense counsel objected, arguing that the shotgun casings recovered were "irrelevant," "not probative of anything," and "certainly prejudicial." The Commonwealth responded that the defense's theory of the case was that the police failed to adequately investigate this matter. To the contrary, these shell casings were recovered after the police executed a search warrant and were indicative of the police properly conducting their investigation. The Commonwealth further argued that the shell casings were important because ballistic analyses indicated that they were fired from the very same shotgun found in the vacant lot. This Court ruled in favor of the Commonwealth, stating that defense counsel failed to object when a prior witness, Officer Lewis, testified regarding the shell casings. Moreover, the Court found that there was no prejudice because the fired shotgun casings, along with the shotgun and other items recovered in the vacant lot, were all recovered concurrently and in connection with the same investigation. (N.T. 4/10/14, p. 32-26).

The Court did not abuse its discretion when it allowed Commonwealth to introduce evidence of the spent shotgun casings because they were relevant to the Commonwealth's case and were not unduly prejudicial to Defendant. First, the spent shotgun casings were relevant as Defendant was charged with carrying a firearm on the public streets of Philadelphia. Leach testified that he saw Defendant brandishing a shotgun and then striking Perez with it. Leach further testified that he heard a gunshot after he turned away from the window. Police later

14

recovered a shotgun and spent shell casings in the vacant lot in close proximity to where Defendant had been arguing with Perez and Geary. Thus, the recovered shell casings were relevant evidence to the case at bar.

Second, as discussed above, defense counsel argued that the police did not conduct a thorough investigation into this matter. She questioned both Detective Demas and Police Officer Lewis as to why they did not request gunshot residue tests on Defendant's clothing and hands. She wanted to know why the police did not try to recover fingerprints from the shotgun. Defense counsel also inquired as to whether they thoroughly canvassed the neighborhood for additional witnesses and suspects. (N.T. 4/9/14, 143-145, 147-148; N.T. 4/10/14, 40-47). Since defense counsel drew into question the police investigation itself, the Commonwealth properly countered with evidence of the investigatory tools employed by the police, including the search for and recovery of evidence.

Last, there was no prejudice to Defendant. Prior to Detective Demas' testimony regarding the shell casings, and the Commonwealth's introduction of photographs of the vacant lot, Officer Lewis already had testified about discovering the shotgun shells on the table and ground in the vacant lot. Officer Lewis further testified regarding the shotgun itself in the "Cabela's" shotgun sleeve, and told the jury that inside the gun there were two live rounds and one spent round, meaning that the gun had been fired. Defense counsel did not object to any of this testimony. (N.T. 4/9/14, p. 118-121). Additionally, counsel actually stipulated to the ballistics report. At the conclusion of the Commonwealth's case-in-chief, the jury was told:

> Stipulation is further that the shotgun was test-fired, and it was operable. Also, the shotgun and all three fired shotgun shells were microscopically examined. Through examination and the comparison of the shotgun and the three fired shotgun shells, it was determined that all three shotgun shells had been fired from that particular shotgun. The shotgun is a pump action shotgun, which

15

means that after the trigger is pulled, the projective or bullet comes out of the front of the shotgun, and the shotgun shell remains in the shotgun. The fired shotgun shell is ejected from the shotgun only after the shotgun is pumped again. The fact that there is one fired shotgun shell recovered in (sic) the shotgun indicates that the shotgun was not pumped after it had last been fired. Ms. Zeccardi [defense counsel] and I both signed those stipulations.

(N.T. 4/10/14, p. 129-130). Thus, the Commonwealth's introduction of the shotgun shells into evidence was cumulative and did not prejudice Defendant in anyway. Since this Court committed no error, the jury's finding of guilt should be affirmed.

### III.    IT WAS NOT IMPROPER FOR THE COMMONWEALTH TO REFER TO THE CITY'S ECONOMIC CONDITIONS IN ITS CLOSING ARGUMENT.

The Commonwealth did not commit prosecutorial misconduct when it referenced the city of Philadelphia's poor economic conditions in its closing argument. Defendant argues that the Commonwealth should not have been permitted to "explain that the economic conditions in Philadelphia were the reason why the police department failed to conduct certain testing" because the Commonwealth "did not present any evidence to support this conclusion." This claim is without merit.

While a closing argument must be based upon evidence in the record or reasonable inferences therefrom, a prosecutor is permitted to respond to defense evidence and engage in oratorical flair. Commonwealth v. Culver, 2012 PA Super 172, 51 A.3d 886, 878 (2012) (citing Commonwealth v. Basemore, 525 Pa. 512, 582 A.2d 861, 869 (1990)). Allegedly improper remarks of a prosecutor during closing arguments must be viewed in the context of the closing argument as a whole. Commonwealth v. Smith, 604 Pa. 126, 985 A.2d 886, 907 (2009) (quoting Commonwealth v. Washington, 549 Pa. 12, 700 A.2d 400, 407-08 (1997)). However, even an otherwise improper comment may be appropriate if it is in fair response to defense counsel's

16

remarks. Commonwealth v. Burno, 96 A.3d 956, 974 (Pa. Super. 2014) (quoting Commonwealth v. Elliott, 80 .2d 415, 443 (Pa. 2013). Furthermore, a prosecutor's comments do not constitute reversible error unless their unavoidable effect was to prejudice the jury, forming in their minds a fixed bias and hostility towards the defendant so that they could not weigh the evidence objectively and render a true verdict. Id.

In the case at bar, the Assistant District Attorney did not engage in prosecutorial misconduct when he explained to the jury that Defendant's clothing had not been tested for gunshot residue and the shotgun had not been checked for fingerprints due to the city's limited economic resources. Specifically, he stated:

> If I had fingerprints, they could say, well, what about the DNA. And then I'd have fingerprints and DNA, and they could say where's the video? I've got all of that, and then they could say, well, why don't you have more evidence? That's their right.
>
> But at the beginning of this trial, Ms. Zeccardi [defense counsel] said, this is Commonwealth versus Darryl Palmer and I have all the resources of the Commonwealth to bring. Let's talk about that. All the resources of the Commonwealth. What does that mean?
>
> You all when you were selected, you said you're from Philadelphia. The Judge told you to use your common sense. You know this. The entire economy is struggling. Our city has a deficit. We close schools. We fire teachers, pay freezes. We close libraries. This is reality.
>
> I wish I had police officers or a police department that could just do every single test regardless of cost, regardless of expense, on every single case, they can't.
>
> I prosecute in Philadelphia, I'm proud of that. This is reality. It's not a TV show. It's not some movie. It's reality. There are costs. Our city has to make choices. They determine when to do these things and when not to do these things. And like Detective Demas said, sometimes you try to get fingerprints and you can't get 'em,

17

(N.T. 4/11/14, p. 28-29). This explanation for the police failure to conduct these tests was in direct response to the defense's theory of the case, specifically that the police conducted a less than thorough investigation into this matter. At trial, defense counsel Ms. Zeccardi questioned Detective Demas on cross-examination regarding the police officers' failure to request gunshot residue tests on Defendant's clothing and hands to prove that he actually had fired the shotgun that day. She further pressed him as to why he chose not to have the shotgun checked for fingerprints. Detective Demas testified that he did not request gunshot residue tests nor did he have the firearm fingerprinted because there was an eyewitness, Mr. Leach, who had positively identified Defendant as the shooter. Ms. Zeccardi asked Officer Lewis the same questions; he testified that he did not attempt to preserve the fingerprints on the firearm because it was already contaminated and that he did not guard the Defendant's clothing or hands for a gunshot residue test.

In addition, in her own closing argument, Ms. Zeccardi argued that the police had failed to do "basic police work" by failing to conduct tests that would produce "neutral evidence." (N.T. 4/11/14, p. 15-16). She told the jury:

> There are very few things in a trial that are neutral. Medical records, injuries caused, that's neutral. There's gunshot residue on the T-shirt and jeans. That's neutral. The defendants' [sic] prints are or are not on the gun. That's neutral.
>
> Not one piece of neutral evidence was put before you, not because they couldn't have it, but because Detective Demas who is not—it is not his job to call [Defendant] guilty. That's not his job.
>
> That's your job. But he elected not to do the very things that would have either buttressed the Commonwealth's case or knocked it out of the park. Either there's gunshot residue or there's not. But they didn't give you that because I knew I had a witness.

Id. at 15.

18

The Commonwealth's closing remarks regarding the police officers' decision not to conduct a gunshot residue test or check for fingerprints on the shotgun directly respond to defense counsel's closing arguments about allegedly shoddy police work and "neutral evidence," as well as her cross-examinations of Detective Demas and Officer Lewis. Moreover, it reiterates Detective Demas' testimony regarding his reason for declining to request these tests, specifically that there was a positive identification by an eyewitness so these tests would have been superfluous and a waste of resources. These comments were all in fair response to defense arguments and were not improper when viewed in the context of counsel's closing arguments as a whole. Furthermore, there was no harm to Defendant. As stated above, "a prosecutor's comments do not constitute reversible error unless their unavoidable effect was to prejudice the jury, forming in their minds a fixed bias and hostility towards the defendant so that they could not weigh the evidence objectively and render a true verdict." This is not the case here. The Commonwealth's closing arguments regarding the economic hardships facing Philadelphia in no way prejudiced Defendant or prevented the jury from rendering a true verdict based upon the evidence. Thus, the Commonwealth did not make improper remarks in its closing argument and the jury's verdict should be affirmed.

19

## CONCLUSION

After reviewing the applicable case law, statutes, and testimony, this Court committed no error. The jury properly found Defendant guilty of carrying a firearm on the public streets of Philadelphia, VUFA § 6108. This Court properly found Defendant guilty of carrying a firearm as a person not to use or possess firearms, VUFA § 6105. In addition, this Court properly permitted the Commonwealth to introduce into evidence the spent shotgun casings recovered along with the shotgun in the vacant lot. Last, the Commonwealth did not improperly reference the city of Philadelphia's financial difficulties in its closing argument. Accordingly, this Court's judgment of sentence should be affirmed.

BY THE COURT:

_____
J.