J-S76043-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOE F. PROVOST | : | |
| | : | |
| Appellant | : | No. 1051 WDA 2018 |

Appeal from the Judgment of Sentence Entered April 19, 2017
In the Court of Common Pleas of Clarion County Criminal Division at
No(s):  CP-16-CR-0000364-2016

BEFORE:  BENDER, P.J.E., KUNSELMAN, J., and MURRAY, J.

MEMORANDUM BY MURRAY, J.: **FILED DECEMBER 24, 2018**

Joe F. Provost (Appellant) appeals from the judgment of sentence imposed after a jury convicted him of endangering the welfare of a child (EWOC), 18 Pa.C.S.A. § 4304(b)(1)(ii).  After careful review, we affirm.

The Commonwealth's case against Appellant depended primarily on the testimony of Morgan Brosius (Brosius) and Sergeant Nicole Peck (Sergeant Peck).  In its opinion filed pursuant to Rule 1925(a) of the Pennsylvania Rules of Appellate Procedure, the trial court summarized their testimony as follows:

> [Brosius] was working the 4:00 p.m. to midnight shift at the Unimart convenience store in New Bethlehem on May 14, 2016 when [Appellant] entered the store, made a purchase and went back outside.  Five minutes later, he re-entered the store and asked for a garbage bag because his girlfriend was sick.  Brosius gave him a bag.  He went back outside for five to ten minutes and then re-entered the store and went to the restroom for an hour. Brosius kept looking at the car because it was a weird situation. After about 45 minutes, things started to seem a little weird because nobody had ever spent that much time in the bathroom

before. [Appellant] had come in from a vehicle that was parked right in front of the store. Brosius could see a woman in the car and there was an infant's car seat in the back. After about 45 minutes[,] [Brosius] began to feel very uneasy. A customer tried to access the restroom and [Appellant] did not respond. Another customer came in and tried to use the restroom and Brosius asked him to try to get the guy out of the restroom because she was genuinely scared. [Appellant] exited the restroom and went outside. He got in the car. Brosius' mother arrived at that time. [Brosius] had called her because she did not know what to do and was asking her for help. As soon as [Appellant] was leaving, the police pulled in. Brosius was not aware the police had been called. Brosius was physically scared because she did not know what was going on.

[Sergeant Peck] of the New Bethlehem Borough Police Department arrived at the Unimart as [Appellant] was beginning to back out. She saw that [Appellant's] pupils were very constricted, he was sweating profusely, was very pale and was shaking a lot. These were . . . signs of someone on drugs. Based on Sergeant Peck's training and experience, it was her opinion that [Appellant] was under the influence of heroin and morphine. [Appellant] told her he had a Fentanyl patch on. [Sergeant] Peck saw an infant in the car. She assumed the infant was 10 or 11 months old. Sergeant Peck observed that the passenger in the car had the same symptoms as [Appellant]. She had constricted pupils, was sweating, was very nervous and could not talk very well. She had a garbage bag on her lap with "puke" in it.

[Sergeant] Peck asked [Appellant] why his pupils were constricted and why he showed signs of being on a pain killer and he said he had a Fentanyl patch and had also taken a Percocet. He said he had a script for the Fentanyl patch, but did not have it on h[i]m. Sergeant Peck asked [Appellant] to perform field sobriety tests and when he attempted the walk and turn test, he had a loss of balance.

Sergeant Peck checked the ownership of the car and found that the passenger, Ms. Duttry, was the owner. Duttry gave [Sergeant] Peck consent to search the car and [Sergeant] Peck found a gray bag in the area where Duttry was sitting that contained needles, a pill grinder and empty stamp bags. Stamp bags are used to package heroin. Also, in a pocket on the driver's door, [Sergeant] Peck found a container with three needles, a

rubber tourniquet and four empty stamp bags of heroin. The items were introduced into evidence.

[Sergeant] Peck saw the infant in the car seat in the middle of the back seat. [Appellant] and Ms. Duttry were the child's parents. Sergeant Peck asked [Appellant] if he was currently under the influence of any narcotics and he said yes, he had a patch on his arm. [Sergeant] Peck had seen [Appellant] drive the car and back up a foot.

Trial Court Opinion, 9/10/18, at 1-4 (citations to notes of testimony omitted).

Appellant was charged with one count each of DUI: controlled substance, EWOC, recklessly endangering another person, and eight counts of possession of drug paraphernalia. On March 22, 2017, the Honorable President Judge James G. Arner presided over a jury trial. That same day, the jury returned a guilty verdict on the EWOC charge; the jury acquitted Appellant of the remaining charges. On April 19, 2017, the trial court sentenced Appellant to two and one half to five years of incarceration. Appellant did not file post-sentence motions or a direct appeal.

On March 20, 2018, Appellant filed a *pro se* petition for post-conviction relief, seeking to have his direct appeal rights reinstated *nunc pro tunc*. Counsel was appointed, and filed an amended petition on April 13, 2018. Following a hearing, the trial court reinstated Appellant's direct appeal rights, and this timely appeal followed. Both Appellant and the trial court have complied with Pennsylvania Rule of Appellate Procedure 1925.

On appeal, Appellant presents one issue for our review: "Did the Commonwealth fail to present sufficient evidence for the jury to find Appellant guilty of Endangering Welfare of a Child where the jury found Appellant not

guilty of the underlying conduct which was the bases of the Endangering

Welfare charge?" Appellant's Brief at 4.

Our standard of review for sufficiency claims is well settled:

As a general matter, our standard of review of sufficiency claims requires that we evaluate the record "in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence." *Commonwealth v. Widmer*, [ ] 744 A.2d 745, 751 ([Pa.] 2000). "Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt." *Commonwealth v. Brewer*, 876 A.2d 1029, 1032 (Pa. Super. 2005).

Nevertheless, "the Commonwealth need not establish guilt to a mathematical certainty." *Id.*; *see also Commonwealth v. Aguado*, 760 A.2d 1181, 1185 (Pa. Super. 2000) ("[T]he facts and circumstances established by the Commonwealth need not be absolutely incompatible with the defendant's innocence"). Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances. *See Commonwealth v. DiStefano*, 782 A.2d 574, 582 (Pa. Super. 2001).

The Commonwealth may sustain its burden by means of wholly circumstantial evidence. *See Brewer*, 876 A.2d at 1032. Accordingly, "[t]he fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence." *Id.* (quoting *Commonwealth v. Murphy*, 795 A.2d 1025, 1038–39 (Pa. Super. 2002)). Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld. *See Brewer*, 876 A.2d at 1032.

*Commonwealth v. Franklin*, 69 A.3d 719, 722-23 (Pa. Super. 2013) (quoting *Commonwealth v. Pettyjohn*, 64 A.3d 1072 (Pa. Super. 2013)).

The crime of EWOC is defined by statute, in relevant part, as follows: "[a] parent, guardian or other person supervising the welfare of a child under 18 years of age commits an offense if he knowingly endangers the welfare of the child by violating a duty of care, protection or support." 18 Pa.C.S.A. § 4304(a).[1] This Court has established a three-element test for EWOC: (1) the accused was aware of his/her duty to protect the child; (2) the accused was aware that the child was in circumstances that could threaten the child's physical or psychological welfare; and (3) the accused has either failed to act or has taken action so lame or meager that such actions cannot reasonably be expected to protect the child's welfare. *Commonwealth v. Pahel*, 689 A.2d 963, 964 (Pa. Super. 1997) (quoting *Commonwealth v. Cardwell*, 515 A.2d 311, 315 (Pa. Super. 1986)).

"In reviewing section 4304, we must be aware that the legislature attempted to prohibit a broad range of conduct in order to safeguard the welfare and security of our children. Further, [t]he common sense of the community should be considered when interpreting the language of the statute." *Commonwealth v. Trippett*, 932 A.2d 188, 194 (Pa. Super. 2007) (citations and quotations omitted).

> The statute does **not** require the actual infliction of physical injury. Nor does it state a requirement that the child or children be in

---

[1] This is the version of Section 4304 in effect at the time of Appellant's offense.

imminent threat of physical harm. Rather it is the awareness by the accused that [his] violation of [his] duty of care, protection and support is practically certain to result in the endangerment to [the] children's welfare, which is proscribed by the statute.

*Commonwealth v. Wallace*, 817 A.2d 485, 491 (Pa. Super. 2002) (emphasis in original). Further, a person must take affirmative, reasonable steps to protect the child:

The affirmative performance required by [Section] 4304 cannot be met simply by showing any step at all toward preventing harm, however incomplete or ineffectual. An act which will negate intent is not necessarily one which will provide a successful outcome. However, the person charged with the duty of care is required to take steps that are reasonably calculated to achieve success. Otherwise, the meaning of the duty of care is eviscerated.

*Pahel*, 689 A.2d at 964.

On appeal, Appellant contests the sufficiency of the evidence as to the first and second elements, contending that the Commonwealth failed to prove that he violated a duty of care or did so knowingly. Appellant's Brief at 9-13. Appellant submits that because he was acquitted of DUI, "the reasonable inference based on that verdict is that Appellant was not impaired to such a degree as to render him incapable of safely driving," and thus, he could not have violated a duty of care. *Id.* at 12. We disagree.

Here, Sergeant Peck stopped Appellant after receiving reports that he was in the restroom of a Unimart for approximately an hour while his ill girlfriend remained in a vehicle with their infant child. N.T., 3/22/17, at 42. Upon approaching Appellant, Sergeant Peck observed that Appellant had "very constricted pupils," and was sweating profusely, pale and shaking. *Id.* at 41.

Appellant's girlfriend, Ms. Duttry, exhibited the same symptoms as Appellant. *Id.* at 43. Based upon her training and experience, Sergeant Peck believed Appellant to be under the influence of drugs. *Id.* at 41-42. Sergeant Peck conducted a standardized field sobriety test, during which Appellant lost his balance. A search of the vehicle revealed needles, a blue pill grinder, a rubber tourniquet, and empty stamp bags. *Id.* at 46-47. Appellant admitted to wearing a Fentanyl patch on his arm and to taking a Percocet prior to driving. *Id.* at 44.

Viewed in the light most favorable to the Commonwealth, as our standard of review requires, the evidence submitted at trial establishes that Appellant left his child in a vehicle with Ms. Duttry, who was also under the influence of drugs, for approximately an hour while he was in the restroom at the Unimart. Appellant, who admitted to wearing a Fentanyl patch and taking a Percocet, then attempted to operate a motor vehicle with his child still inside the car. Accordingly, the evidence supports the jury's finding that Appellant violated the duty of care to his child.[2]

---

[2] To the extent Appellant argues that his verdicts were inconsistent, we note that "under longstanding federal and state law, [inconsistent verdicts] are allowed to stand so long as the evidence is sufficient to support the conviction." **Commonwealth v. Miller**, 35 A.3d 1206 (Pa. 2012) (citing **Dunn v. United States**, 284 U.S. 390, 393 (1932) (holding that "[c]onsistency in the verdict is not necessary" and refusing to allow inconsistent verdicts to be upset by "speculation or inquiry" into the possibility of compromise or mistake on the part of the jury); **United States v. Powell**, 469 U.S. 57, 58 (1984) (applying the ruling in **Dunn**, which the Court

Appellant also contends that he did not act "knowingly" under these circumstances. *Id.* at 12-13. He submits that the Commonwealth did not prove beyond a reasonable doubt that he knowingly endangered the welfare of his child because Appellant used prescribed medication. *Id.* at 13. Appellant argues that "it would be incredulous to suggest that any parent knows he or she endangers his or her child from the mere act of ingesting prescribed medication." *Id.*

EWOC is a specific intent crime. In other words, "[t]he accused must act 'knowingly' to be convicted of endangering the welfare of a child." *Retkofsky*, 860 A.2d 1098, 1099 (Pa. Super. 2004) (citations and quotations omitted). Instantly, Appellant's contention that he did not act knowingly is without merit. Ms. Brosius testified that Appellant entered the Unimart and asked for a garbage bag because his girlfriend was sick. N.T., 3/22/17, at 27. After briefly returning to his vehicle, Appellant re-entered the Unimart, where he spent approximately an hour in the restroom. Ms. Brosius observed Appellant's girlfriend and his child remain in the vehicle while Appellant was in the restroom. *Id.* at 30. Sergeant Peck testified that Appellant's sick girlfriend exhibited the same symptoms of drug-related impairment as

---

explained as follows: "a criminal defendant convicted by a jury on one count could not attack that conviction because it was inconsistent with the jury's verdict of acquittal on another count"). As discussed above, the evidence was sufficient to support Appellant's EWOC conviction. Accordingly, any claim by Appellant that his verdicts were inconsistent lacks merit.

Appellant. *Id.* at 43. This testimony, if believed by the jury, was sufficient to establish that Appellant knowingly left his child "in circumstances that could threaten the child's physical or psychological welfare." *Retkofsky*, 860 A.2d at 1100. Thus, despite Appellant's arguments to the contrary, we hold that the evidence was sufficient to sustain the jury's EWOC conviction.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/24/2018