J-S23012-19

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| BOBBY HALL, | |
| Appellant | No. 1027 WDA 2018 |

Appeal from the Judgment of Sentence Entered February 28, 2018
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0005761-2017

BEFORE:  BENDER, P.J.E., NICHOLS, J., and COLINS, J.*

MEMORANDUM BY BENDER, P.J.E.:                    FILED JUNE 18, 2019

Appellant, Bobby Hall, appeals from the judgment of sentence of an aggregate term of 2 years' probation, imposed after he was convicted, following a non-jury trial, of simple assault (18 Pa.C.S. § 2701(a)(1)) and official oppression (18 Pa.C.S. § 5301(1)).  We affirm.

Appellant presents the following two issues for our review:

I.     There was insufficient evidence to support the conviction for simple assault where the medical report stated that Michael Miller did not suffer any injuries and the Commonwealth failed to establish that Hall intended or attempted to cause any injury to Michael Miller, and the trial court erred in denying the post-sentence motion raising this claim.

II.    There was insufficient evidence to support the conviction for official oppression where the Commonwealth failed to establish that Michael Miller was mistreated by [Appellant]

_____

* Retired Senior Judge assigned to the Superior Court.

in [Appellant's] capacity as a corrections officer, where: (1) Michael Miller did not appear for trial and offer any supporting testimony; (b) the Commonwealth failed to offer into evidence any written prison policies and procedures to establish [Appellant's] conduct was unlawful; and (c) the Commonwealth failed to establish whether [Appellant] knowingly and illegally acted in bad faith in response to Michael Miller spitting in his face, and the trial court erred in denying the post-sentence motion raising this claim.

Appellant's Brief at 5.

We have reviewed the certified record, the briefs of the parties, and the applicable law. Additionally, we have reviewed the thorough and well-reasoned opinion of the Honorable Beth A. Lazzara of the Court of Common Pleas of Allegheny County. We conclude that Judge Lazzara's opinion accurately disposes of the issues presented by Appellant. Accordingly, we adopt her opinion as our own and affirm Appellant's judgment of sentence for the reasons set forth therein.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/18/2019

- 2 -

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA
CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA,   CC No. 2017-5761

v.

BOBBY HALL,

Defendant.

ORIGINAL
Criminal Division
Dept. Of Court Records
Allegheny County, PA

OPINION

BETH A. LAZZARA, JUDGE
Court of Common Pleas

Copies Sent To:

Mike W. Streily, Esq.
Office of the District Attorney
401 Courthouse
Pittsburgh, PA 15219

Diana Stavroulakis, Esq.
262 Elm Court
Pittsburgh, PA 15237

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA,    CRIMINAL DIVISION

vs.    CC # 2017-5761

BOBBY HALL,

Defendant.

## OPINION

This is a direct appeal from the judgment of sentence entered on February 28, 2018, following a non-jury trial that took place on February 28, 2018. The Defendant was charged with Simple Assault (18 Pa. C.S.A. §2701(a)(1)) and Official Oppression (18 Pa C.S.A. §5301(1). At the conclusion of trial, this court found the Defendant guilty of both charges. The Defendant waived his right to a Presentence Report and proceeded to sentencing immediately following his convictions.

The Defendant was sentenced to two (2) years of probation at each count, ordered to run concurrently. A No Contact Order was imposed, prohibiting the Defendant from having contact with inmates Michael Miller and Jamie Painter. The Defendant was ordered to pay court costs.

1

A post-sentence motion was filed by the Defendant on March 12, 2018. On March 16, 2018, appellate counsel entered her appearance on the record. On March 23, 2018, the Defendant's trial counsel sought leave to withdraw from representation. His request was granted that same day. A supplemental post sentence motion was filed on May 14, 2018. The motion was heard and denied on June 19, 2018. This timely appeal followed.

On August 1, 2018, this court issued an Order pursuant to Pa.R.A.P.1925(b), directing the Defendant to file a Concise Statement of Matters Complained of on Appeal ("Concise Statement") no later than August 24, 2018. On August 24, 2018, the Defendant filed a timely Concise Statement and raised the following allegations of error on appeal:

a. There was insufficient evidence to support the conviction for simple assault where the medical report stated that Michael Miller did not suffer any injuries and the Commonwealth failed to establish that Hall intended or attempted to cause any injury to Michael Miller, and the trial court erred in denying the post-sentence motion raising this claim.

b. There was insufficient evidence to support the conviction for official oppression where the Commonwealth failed to establish that Michael Miller was mistreated by Hall in his capacity as a corrections officer where, (a) Michael Miller did not appear for trial and offer any supporting testimony; (b) the Commonwealth failed to offer into evidence any written prison policies and procedures to establish Bobby Hall's conduct was unlawful; and (c) the Commonwealth failed to establish whether Hall knowingly and illegally acted in bad faith in response to Michael Miller spitting in his face, and the trial court erred in denying the post-sentence motion raising this claim.

(Concise Statement, pp. 2-4).

2

The Defendant's contentions are without merit. This court respectfully requests that the Defendant's convictions and sentences be upheld for the reasons that follow.

## I.    **FACTUAL BACKGROUND**

On the evening of December 10, 2016, the Defendant, a Pennsylvania State Department of Corrections Officer ("CO"), was working as a "control booth officer" (also known as a "bubble control officer") on the A-200 Block at the State Correctional Institution at Pittsburgh ("SCI Pittsburgh"). (Trial Transcript ("TT"), 2/28/18, pp. 12-14, 100). As a CO, the Defendant was responsible for "provid[ing] security for the prison, inmates, and staff." (TT, p. 11). It is also the duty of a CO to ensure inmate compliance with the rules and regulations of the Department of Corrections, as well as ensure staff compliance with the code of ethics. (TT, pp. 11, 12). As a control booth officer, the Defendant was responsible for overseeing that "all passes are issued out, all movements are being made at all times," and that "cell doors are being opened properly at all times." (TT, p. 14). On December 10, 2016, the Defendant was working the same shift as his co-worker, CO John Bezts. (TT, pp. 12-13). The shift began at 14:00 hours (or 2 p.m.). (TT, pp. 12-13).

At approximately 6:50 p.m., CO Bezts was preparing to perform cell compliance checks in the pod, which was a therapeutic community for drug and alcohol treatment. (TT, pp. 14-16, 74). The Defendant specifically asked CO Bezts to conduct a compliance check of a cell which belonged to Inmate Michael Miller and his cellmate,

3

Jamie Painter. (TT, pp. 15-16, 31, 55, 57). Unbeknownst to CO Bezts, the Defendant requested the compliance check of Inmate Miller's cell because the Defendant and Miller had gotten into an argument about "yard time" shortly before the compliance checks. (TT, pp. 56-58). CO Bezts agreed to perform the check. (TT, pp. 15-16, 31). CO Bezts, along with another corrections officer, CO Mitchell, were inside of the cell conducting the compliance check when Inmate Miller commented to CO Bezts that Bezts was only performing the compliance check "because of that fat ass in the [ ] control center." (TT, pp. 16, 58). CO Bezts warned Inmate Miller to watch what he said about the officers in front of other corrections officers. (TT, p. 16). Inmate Painter also told Inmate Miller "to be quiet because Officer Bezts was just doing his job." (TT, p. 16).

After completing the compliance check and discovering contraband in the form of two small portable radios, CO Bezts returned to the control booth and relayed the results of his search to the Defendant. (TT, pp. 16-17, 31-32, 58). CO Bezts also told the Defendant that "Inmate Miller called him a fat ass." (TT, pp. 17, 33-34). The Defendant became very angry. (TT, p. 17). He asked CO Bezts whether Inmate Miller "actually said that," and CO Bezts confirmed that he did. (TT, p. 17). The Defendant's "face turned red, and he bolted out of the control booth." (TT, p. 17). CO Bezts did not know why the Defendant had left the control booth, but he observed the Defendant walking very quickly towards Inmate Miller's cell, which was closed and secured at that time. (TT, pp. 17-20, 36). CO Bezts testified that there was no reason, according to his training and experience, for the Defendant to leave the control booth at that time. (TT, p. 18).

4

CO Bezts watched from near the vestibule door of his pod as the Defendant approached Inmate Miller's cell. (TT, pp. 19, 36). CO Bezts could not understand exactly what the Defendant was saying to Inmate Miller, but he was able to hear the Defendant "hollering, screaming at Inmate Miller," and "using profanity", describing the Defendant as "upset and irate." (TT, pp. 19-20, 36, 58). The Defendant was the only person that CO Bezts heard using profanity. (TT, pp. 20, 22). According to Inmate Painter, Inmate Miller "looked at Officer Hall and said: Your problem is, you fat fuck, you get no p*ssy, zero p*ssy." (TT, p. 58). At this point, the Defendant turned to CO Bezts and told him to "[o]pen the fucking door, open the fucking door now". (TT, pp. 20, 38-39, 58). CO Mitchell, who was inside of the control booth at that time, reluctantly opened the cell door for the Defendant. (TT, pp. 20, 40).

CO Bezts observed the Defendant enter Inmate Miller's cell. (TT, p. 20). Since he was the only officer on the unit equipped with "OC spray," a chemical spray used to break up inmate altercations, CO Bezts decided to proceed to Inmate Miller's cell, number 2013, and stand outside of the cell. (TT, pp. 20-21, 23). The Defendant had been arguing at the cell door for approximately one minute or less before CO Bezts headed up to the cell. (TT, p. 36). In fact, the Defendant was already inside of the cell before CO Bezts went up the steps leading to the cell door. (TT, p. 40). However, during the entire incident, CO Bezts only lost sight of the Defendant for approximately three (3) to four (4) seconds. (TT, p. 40).

5

When CO Bezts approached the cell, he observed Inmate Miller sitting at the edge of his bed on the bottom bunk, facing the desk. (TT, pp. 22, 58-59). His cellmate, Inmate Painter, was also inside of the cell, standing by the desk against the wall. (TT, pp. 22, 55, 58-59). CO Bezts saw the Defendant enter the cell and start pointing at Inmate Miller. (TT, p. 23). The Defendant continued to scream and use profanity while Inmate Miller "just sat there" on the bed. (TT, p. 23).

At no time did CO Bezts see Inmate Miller spit on the Defendant. (TT, p. 22). He did, however, see the Defendant clench his right fist and hit Inmate Miller in the face. (TT, p. 23). CO Bezts then saw the Defendant hit Inmate Miller in the chest with an open-handed back-hand while Inmate Miller was still sitting on the edge of the bed. (TT, p. 23). CO Bezts saw the Defendant lean forward onto Inmate Miller and grab him by the neck with both hands. (TT, pp. 23-24). According to Inmate Painter, the Defendant grabbed Inmate Miller "up by the throat and put him down on the bunk and smacked him in the mouth and called him a p*ssy. He smacked [him] a couple times and said: You're a p*ssy, bitch. Say it now. Say something to my face now, bitch." (TT, p. 59).

Approximately one minute later, the Defendant stood up, turned towards CO Bezts, and asked him for his handcuffs. (TT, pp. 23-24, 41, 59). He told CO Bezts to "call it in as a staff assault because he got spit on." (TT, pp. 24, 40-41). CO Bezts gave the Defendant his handcuffs, but stayed outside of the cell. (TT, pp. 24, 51). CO Bezts

6

did not "call it in as a staff assault" because he "did not see Inmate Miller spit on" the Defendant. (TT, p. 41). Instead, he simply requested "assistance up in Alpha 200, B side." (TT, pp. 41-42). Inmate Painter testified that Inmate Miller never spit on the Defendant and never attempted to assault him in any way. (TT, p. 63).

The Defendant ordered Inmate Miller to stand up so that he could place Miller in handcuffs. (TT, pp. 24-25). As he was removing Inmate Miller from the cell, the Defendant had his hands behind Inmate Miller's back and was using force to push him out of the cell. (TT, p. 25). Inmate Painter saw the Defendant swing Inmate Miller around, causing Inmate Miller to hit the side of his head on the corner of a shelving unit and fall. (TT, pp. 25-26, 59). CO Bezts testified that "it looked like [Inmate Miller] either "slipped on the blanket or [was] pushed from behind." (TT, p. 25). Inmate Painter testified that he heard the Defendant say, "you slipped on the rug," but noted that "there was no rug or object on the floor whatsoever." (TT, p. 59).

Inmate Miller appeared to be "fidgeting" at that point, perhaps indicating resistance, and so CO Bezts showed him his OC spray can and told him that if he complied with the orders then he would be taken to the medical unit. (TT, p. 26). Per the policy of the Department of Corrections, Inmate Miller was escorted out of the cell by the Defendant and CO Bezts. (TT, pp. 26, 75). When they arrived in the vestibule area of the pod, the Defendant shoved Inmate Miller into a member of the response team, telling the responder to "[g]et this mother fucker out of here. He spit on me." (TT,

7

pp. 27, 42, 75). Inmate Miller was then taken to the medical unit. (TT, pp. 27, 75).

Upon examination, medical personnel did not observe any visible injuries to Inmate

Miller. (TT, p. 78).

CO Bezts proceeded to complete an incident report outlining his own actions in

relation to the incident that had just occurred. (TT, pp. 27-28, 42, 44-45, 50). He then

returned to his pod and apologized to Inmate Painter and the other inmates "for what

they observed and heard" on his pod. (TT, p. 29). Inmate Painter was "upset" about

the incident but he told CO Bezts, "you had nothing to do with this." (TT, p. 29). He also

told CO Bezts, "[Y]ou better do the right thing." (TT, p. 61).

## II. DISCUSSION

### A. The evidence presented at trial was sufficient to support the Defendant's convictions for Simple Assault and Official Oppression.

The appellate court employs a *de novo* standard of review for challenges to the

sufficiency of evidence. Commonwealth v. Neysmith, - - - A.3d - - - -. 2018 WL

3153691, at *4 (Pa. Super. 2018). Our appellate courts have explained this standard as

follows:

> [O]ur standard of review of sufficiency claims requires that we evaluate the record "in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence." Commonwealth v. Widmer, 744 A.2d 745, 751 (Pa. 2000). "Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the

8

commission thereof by the accused, beyond a reasonable doubt."
Commonwealth v. Brewer, 876 A.2d 1029, 1032 (Pa. Super. 2005).
Nevertheless, "the Commonwealth need not establish guilt to a
mathematical certainty." Id.; see also Commonwealth v. Aguado, 760 A.2d
1181, 1185 (Pa. Super. 2000) ("[T]he facts and circumstances established
by the Commonwealth need not be absolutely incompatible with the
defendant's innocence"). Any doubt about the defendant's guilt is to be
resolved by the fact finder unless the evidence is so weak and
inconclusive that, as a matter of law, no probability of fact can be drawn
from the combined circumstances. See Commonwealth v. DiStefano, 782
A.2d 574, 582 (Pa. Super. 2001).

The Commonwealth may sustain its burden by means of wholly
circumstantial evidence. See Brewer, 876 A.2d at 1032. Accordingly,
"[t]he fact that the evidence establishing a defendant's participation in a
crime is circumstantial does not preclude a conviction where the evidence
coupled with the reasonable inferences drawn therefrom overcomes the
presumption of innocence." Id. (quoting Commonwealth v. Murphy, 795
A.2d 1025, 1038–39 (Pa. Super. 2002)). Significantly, we may not
substitute our judgment for that of the fact finder; thus, so long as the
evidence adduced, accepted in the light most favorable to the
Commonwealth, demonstrates the respective elements of a defendant's
crimes beyond a reasonable doubt, the appellant's convictions will be
upheld. See Brewer, 876 A.2d at 1032. Commonwealth v. Rahman, 75
A.3d 497, 500-01 (Pa. Super. 2013) (quoting Commonwealth v. Pettyjohn,
64 A.3d 1072 (Pa. Super. 2013)) (citations omitted).

It is clear that "the evidence established at trial need not preclude every

possibility of innocence and the fact-finder is free to believe all, part, or none of

the evidence presented." Commonwealth v. Brown, 52 A.3d 320, 323 (Pa. Super.

2012). "Where there is sufficient evidence to enable the trier of fact to find every

element of the crime has been established beyond a reasonable doubt, the

sufficiency of the evidence claim must fail." Id. at 323.

*Simple Assault*

In order to sustain its burden of proof for a simple assault, the Commonwealth must show that the Defendant "attempt[ed] to cause or intentionally, knowingly or recklessly cause[d] bodily injury to another.]" 18 Pa.C.S. § 2701(a)(1). "Bodily injury" is defined as "[i]mpairment of physical condition or substantial pain." 18 Pa.C.S. § 2301. "The Commonwealth need not establish that the victim actually suffered bodily injury; rather, it is sufficient to support a conviction if the Commonwealth establishes an attempt to inflict bodily injury." Commonwealth v. Richardson, 636 A.2d 1195, 1196 (Pa. Super. 1994). "This intent may be shown by circumstances which reasonably suggest that a defendant intended to cause injury." Id. at 1196 (internal citations omitted).

The Defendant contends that this court erred when it found the evidence sufficient to support a simple assault conviction. He argues that the Commonwealth failed to prove that he intended to cause injury to Michael Miller. In support of that argument, the Defendant cites to the medical report, which did not note any visible injuries on Inmate Miller. (Concise Statement p. 2). This contention has no merit.

The evidence viewed in the light most favorable to the Commonwealth established beyond a reasonable doubt that the Defendant, at the very least, attempted to cause bodily injury to Michael Miller. This court sat as the fact-finder during trial, and, as such, the issue of credibility was solely for this court to resolve. After carefully

studying the tone and demeanor of the witnesses, the court found that the testimony of CO Bezts was compelling, consistent, and carried with it the "ring of truth."

To summarize, CO Bezts observed that the Defendant become irate after learning that Inmate Miller had called him a "fat ass." (TT, p. 17). He further observed that the Defendant's face turned red after learning of the comment, and then he watched the Defendant abruptly, and inexplicably, leave his post, storm over to Inmate Miller's cell, scream profanities at him through the door, and demand that the cell door be opened. (TT, pp. 17-20). Moreover, CO Bezts personally observed the Defendant enter the cell and hit Inmate Miller twice -- first with a closed fist to the face, and then a second strike to the chest. (TT, p. 23). CO Bezts saw the Defendant lean over Inmate Miller, who was still sitting on his bed, and grab him by the neck with both of his hands. (TT, pp. 22-23). Punching a person with a closed fist in the face, striking a person forcefully in the chest and placing both hands around a person's neck are clear attempts to cause injury to another.

CO Bezts' testimony was found to be truthful by this court for several reasons. First, CO Bezts had his eyes on the Defendant for all but four (4) seconds of the incident, during which time he never saw Inmate Miller spit on the Defendant, but he did witness the Defendant's assaultive behavior, both verbally and physically, toward Inmate Miller. (TT, pp. 22, 40). Second, CO Bezts had no motive or reason to fabricate his testimony, as he had never met Inmate Miller until the day of the incident. Also, he

11

no longer worked at SCI Pittsburgh, and, as such, was not trying to cover for or protect Inmate Miller. (TT, pp. 11, 29). CO Bezts' testimony also was substantially corroborated by Inmate Painter, especially with respect to key points regarding the incident, including the general narrative, the specifics of the interaction, the number of times that the Defendant hit Inmate Miller, the fact that the Defendant grabbed him by the neck, and the fact that the Defendant was incessantly swearing at Inmate Miller. (TT, p. 59). Inmate Painter was inside of the cell immediately prior to, and during the assault, and he also testified that he never saw Inmate Miller spit on the Defendant. (TT, p. 63). He did, however, see the Defendant hit Inmate Miller in the mouth more than once. (TT, p. 59). Lastly, the fact that CO Bezts would offer testimony that adversely affected a colleague makes his testimony even more believable.

The Defendant testified at trial, and he offered a different account of the events of that day. However, this court did not find the Defendant's testimony to be credible at all. For example, this court did not believe the Defendant's claim that he was spit on. Two of the three people present during the incident testified that Inmate Miller never spit on the Defendant. Further, the fact that the Defendant supposedly waited three (3) hours before seeking medical attention after exposure to a potential infection-carrying substance defied credibility. (TT, pp. 80-81). Frankly, the court believed that the spitting claim was an after-the-fact justification that was contrived to explain away his behavior. Additionally, after watching the Defendant testify, it was easy for this court to see how his temperament had led him to such an emotional over-reaction to Inmate Miller's

12

comment. Essentially, the Defendant's own demeanor lent substantial credibility to the testimony of CO Bezts and Inmate Painter. The Defendant's behavior of charging over to the cell after learning that Inmate Miller had called him an offensive name, demanding that the cell be opened, towering over the inmate while punching him in the face and hitting him in the chest, grabbing his neck, and swearing at him, all support a finding of intent, and attempt, to cause bodily injury.

The Defendant's reliance on the medical report is unavailing, as it has already been noted that there is no requirement that an actual injury be sustained to prove a simple assault. Richardson, supra, at 1196. Thus, the fact that no injuries were observable on Inmate Miller within minutes of the incident does not preclude a finding that the Defendant specifically intended to cause such injury when he punched Miller in the face, hit him in the chest, and grabbed him by the neck. The court also notes that it would be reasonable to infer that Inmate Miller felt pain from the assault, and that the lack of testimony regarding pain does not preclude a finding that the Defendant caused bodily injury. See Commonwealth v. Jorgenson, 492 A.2d 2 (Pa. Super. 1985), rev'd. on other grounds, 517 A.2d 1287 (Pa. 1986) (jury may infer that twice striking a person across the face causes pain even if there is not testimony of pain). Commonwealth v. Barnett, 384 A.2d 965, 968 (Pa. Super. 1978) (where appellant struck one officer with his fists and struggled with another officer, evidence was sufficient to prove appellant "at least attempted a simple assault upon both officers").

13

In any event, the Defendant's actions were intentional, and the circumstances surrounding those actions were sufficient to prove that he, at the very least, attempted to cause bodily injury. This court was free to believe all, part, or none of the evidence, and the evidence, viewed in the light most favorable to the Commonwealth as verdict-winner, was more than sufficient to find, beyond a reasonable doubt, that the Defendant had a specific intent to cause bodily injury to Inmate Miller.

### Official Oppression

The Official Oppression statute states, in relevant part, that: "[a] person acting or purporting to act in an official capacity or taking advantage of such actual or purported capacity commits a misdemeanor of the second degree if, knowing that his conduct is illegal, he subjects another to arrest, detention, search, seizure, *mistreatment*, dispossession, assessment, lien or other infringement of personal or property rights. 18 Pa.C.S.A. §5301(1). "The statute was broadly drafted to include all opportunities for oppressive use of official power." Commonwealth v. Checca, 491, A.2d 1358, 1366 (Pa. Super. 1985). The official oppression statute was intended "to reach numerous situations wherein an official engages in wrongdoing while acting in his official capacity." Id. at 1367. The statute "applies to . . . *aggressive action against the individual.*" Id. at 1366 (emphasis added).

14

The Defendant argues that this court erred in finding that the evidence was sufficient to sustain a conviction for Official Oppression. He argues that the Commonwealth failed to prove that Inmate Miller was mistreated by the Defendant in his capacity as a corrections officer because Inmate Miller did not appear for trial and because the Commonwealth "failed to offer into evidence any written prison policies and procedures" to establish that the Defendant's "conduct was unlawful." (Concise Statement, pp. 2-3). The Defendant also argues that the Commonwealth failed to establish whether the Defendant "knowingly and illegally acted in bad faith in response to Michael Miller spitting on his face . . . ." (Concise Statement, p. 3). This contention also lacks merit.

As an initial matter, Inmate Miller's absence at trial did not preclude a conviction because the testimony of the two (2) eyewitnesses who directly observed the Defendant's conduct was more than sufficient to prove the charge. Furthermore, this court did not require evidence of any formal policies or procedures to comprehend that an on-duty corrections officer physically assaulting an inmate without sufficient justification is unlawful. It must be pointed out that there was no suggestion at any time that the Defendant was off-duty or not within the scope of his employment duties as a corrections officer when this incident occurred. The court notes, however, that there was testimony regarding how the Defendant violated prison policy and procedure when he left the control booth without a legitimate reason and when he entered the cell without first asking the inmates to exit. (TT, pp. 18, 27-28).

15

In any event, the circumstances surrounding the assault were more than sufficient to prove that the Defendant abused his power as a corrections officer and mistreated Inmate Miller. The assault occurred in a small, 8x10 cell, in an area that was outside the ambit of the surveillance cameras. (TT, pp. 60-61, 74). It is reasonable to infer that, because the assault occurred in such small quarters, out of public view, the threatening nature of the entire interaction was significantly heightened. (TT, pp. 36-37). Further, Inmate Miller was seated on the edge of his bed when the Defendant entered the cell and began hitting, grabbing, and swearing at him, and Miller remained seated during the assault. (TT, pp. 23, 58-59). There was also a substantial physical disparity between the Defendant and Inmate Miller, since the Defendant was "a big guy" and Inmate Miller was only 5'4" and 140 pounds. (TT, pp. 23-24, 59).

As noted earlier, this court did not believe the Defendant's testimony that Inmate Miller spit on him. To the contrary, the court believed that the only thing which provoked the Defendant's aggressive, hostile and physically abusive conduct was the fact that he was called an offensive name. The Defendant's behavior is precisely the kind that the statute was designed to encompass. While Inmate Miller may have hurt the Defendant's feelings, certainly the Defendant did not require a manual or policies and procedures to inform him that his brutish, aggressive and violent response to name-calling was unlawful. The Defendant abused his position as a corrections officer when he left his post without justification, demanded entry into Miller's cell, and committed an assault therein simply because he was angry or offended that he was called a name. Accordingly, the evidence presented by the Commonwealth was sufficient to prove

16

beyond a reasonable doubt that the Defendant mistreated Inmate Miller while acting in his official capacity. This court respectfully requests that the Defendant's contentions be rejected on appeal.

## III.   CONCLUSION

The Defendant's allegations of error on appeal are without merit. Based on the foregoing, sufficient evidence was presented to support the Defendant's convictions for simple assault and official oppression. The Defendant's convictions should, therefore, be upheld.

BY THE COURT:

_____, J.
BETH A. LAZZARA, JUDGE

_____
DATE   10/25/18

17