COMMONWEALTH of Pennsylvania, Appellee

v.

Gerald E. BREWER, Appellant.

Superior Court of Pennsylvania.

Argued March 29, 2005.

Filed June 2, 2005.

Stanley W. Greenfield, Pittsburgh, for appellant.

Michael W. Streily, Deputy District Attorney, Pittsburgh and Francesco L. Nepa, Assistant District Attorney Pittsburgh, for Commonwealth, appellee.

Before: HUDOCK, POPOVICH, and JOHNSON, JJ.

OPINION BY JOHNSON, J.:

¶ 1 Gerald E. Brewer, former Wilkinsburg Borough Chief of Police, appeals the judgment of sentence imposed following his conviction of Theft by Unlawful Taking or Disposition and Retaliation Against a Witness, 18 Pa.C.S. §§ 3921, 4953 (respectively). Brewer contends that the Commonwealth adduced insufficient evidence to sustain his Retaliation conviction and that the trial court erred in admitting expert testimony concerning Brewer's stewardship of funds confiscated by the police department pending resolution of the defendants' cases. After careful consideration, we do not find grounds for the relief Brewer seeks. Accordingly, we affirm the judgment of sentence.

¶ 2 This matter arose following investigation by the District Attorney of Allegheny County of irregularities in the handling of confiscated cash by the Wilkinsburg Police Department (Department). Beginning in late 1999, the District Attorney (D.A.) made several requests that the Department surrender, in compliance with court order, money seized during certain drug arrests. Having made a first request by letter on November 23, 1999, the D.A.'s office awaited Brewer's response for four months. On March 17, 2000, having received no response, the office contacted Brewer by telephone and left a message referring to the November 1999 letter and asking Brewer to respond. When on April 18, the D.A. had received no response, office staff telephoned Wilkinsburg evidence officer Randall Gernhardt and again left a message requesting the department's compliance with the applicable court or-

ders. Gernhardt, too, failed to respond. Consequently, on May 11, the D.A.'s office telephoned Wilkinsburg sergeant Robert Tuite and requested his assistance in obtaining compliance with the outstanding court orders. After receiving the orders, Tuite delivered them to Brewer, who responded that he was aware of them. Nevertheless, he did not direct immediate compliance but instead directed Tuite to schedule a meeting at the D.A.'s office during the following week, at which time Tuite was to hand over the money. Having scheduled a meeting for May 16, Tuite appeared with ten envelopes, none of which carried the customary property voucher form. Additionally, one of the envelopes, which contained $797, did not correspond to any case then pending.

¶ 3 In view of these apparent discrepancies and the irregular manner in which the funds had been handled, Tuite consulted Lieutenant Thomas Kocon, the Department's professional standards officer and former acting chief, concerning his suspicion that Brewer might be engaged in stealing money. In response, Kocon began a covert investigation, appearing at Brewer's office and informing him that an attorney representing a defendant David Mitchell was waiting on the first floor with a court order directing the surrender of $770 seized from Mitchell's wallet on July 6, 1998. Kocon later testified that Brewer appeared flustered, began to shuffle papers, and directed him to return in ten minutes. When, ten minutes later, Kocon did return, Brewer handed him a plain white envelope marked "wallet" that contained $770 in cash. However, the envelope bore no property voucher and neither the denominations nor the serial numbers of the currency inside matched those of the currency originally seized from David Mitchell. Moreover, Kocon recalled that when he re-entered Brewer's office, he saw several evidence envelopes torn open and a substantial amount of cash lying on Brewer's desk. Subsequently, Kocon relayed his suspicion to a detective at the D.A.'s office that Brewer might be stealing money from evidence envelopes kept in a safe in the chief's office. Based on Kocon's report, the detective obtained and served a warrant to search both the office and the safe. At the completion of the search, the detective determined that more than $6000 in cash the police had seized was missing.

¶ 4 On December 8, 2000, Brewer submitted a letter of resignation to Wilkinsburg mayor Wilbert Young effective December 21, 2000, and the mayor appointed interim chief Harvey Adams to assume command of the police department. On his last day in office, Brewer sent an e-mail to a colleague in Tuscon, Arizona, indicating foreknowledge of disciplinary action to be taken against both Lieutenant Kocon and Sergeant Tuite, ostensibly in response to their investigation. The message stated:

Our two lieutenants will be suspended tomorrow and everyone in CID [Criminal Investigation Division] reassigned to Patrol. I have picked a new Sgt to head up CID and a new staff for him. I am letting the Mayor run with the ball so as not to appear retaliatory. The department is excited about lowering the boom on these two. They have been threatening and intimidating for years and everyone was scared of them.

Five days later, on December 26, 2000, acting chief Adams apprised Sergeant Tuite that he and his entire CID unit were to be transferred to the patrol division effective four days later on January 1, 2001. Similarly, he demoted Lieutenant Kocon, the former acting chief, from detective and professional standards officer, placing him in charge of meter patrol. Both sustained substantial pay cuts and were stripped of their department vehicles.

On the following day, December 27, 2000, Brewer again wrote his colleague in Tuscon: "Everything here is back to normal. We cleaned out CID and transferred all back to the road; demoted 1 Lt and looks like termination for the other (4 months short of pension)."

¶ 5 Following these incidents, the Commonwealth charged Brewer with Theft by Unlawful taking in response to the absence of confiscated cash from the police safe and Retaliation Against a Witness for the demotions of Kocon and Tuite. At trial, the Commonwealth sought to substantiate the retaliation charge with Brewer's e-mails, arguing that they demonstrated both his complicity in actions taken by the new police chief against Kocon and Tuite, and his recognition of the criminal nature of his actions in so doing. Further, the Commonwealth introduced expert testimony concerning appropriate practices in handling confiscated cash, seeking to demonstrate that Brewer "allowed the Wilkinsburg evidence-collecting system to deteriorate to ... a woeful state as a mere cover for his thievery." Brief for Appellee at 28. Brewer elected to conduct his defense *pro se* and at the conclusion of trial a jury found him guilty as charged. At sentencing, the trial court, the Honorable Raymond A. Novak, imposed a term of one to two years' incarceration on the retaliation conviction, consecutive to one to five years' incarceration on the theft conviction, both sentences to be served in state prison. Judge Novak stayed the sentence pending appeal. Brewer now raises the following questions for our review:

I. Whether the evidence presented by the Commonwealth was sufficient to sustain the appellant's conviction for retaliation against witness, victim or party?

II. Whether the trial court committed a clear abuse of its discretion in allowing testimony regarding the condition of the system by which the appellant—the chief of the Wilkinsburg police—maintained the money seized as evidence from defendants?

Brief for Appellant at 1.

■■■ ¶ 6 By way of his first question, Brewer seeks arrest of judgment based on the legal sufficiency of the evidence adduced to sustain his conviction for retaliation against a witness. Our standard of review of sufficiency claims requires that we evaluate the record "in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence." *Commonwealth v. Widmer*, 560 Pa. 308, 744 A.2d 745, 751 (2000). "Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt." *Id.* Nevertheless, "the Commonwealth need not establish guilt to a mathematical certainty," see *Commonwealth v. Coon*, 695 A.2d 794, 797 (Pa.Super.1997), and may sustain its burden by means of wholly circumstantial evidence, see *Commonwealth v. Aguado*, 760 A.2d 1181, 1185 (Pa.Super.2000); see also *Commonwealth v. Murphy*, 795 A.2d 1025, 1038–39 (Pa.Super.2002) ("[T]he fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence."). Significantly, "[we] may not substitute [our] judgment for that of the factfinder; if the record contains support for the convictions they may not be disturbed." *Commonwealth v. Ostrosky*, 866 A.2d 423, 427 (Pa.Super.2005).

■■■ ¶ 7 In support of his assertion of insufficiency, Brewer does not argue that the evidence failed to establish specific

elements of the crime, but rather that because his conviction was based on accomplice liability arising from his alleged complicity with acting chief Harvey Adams, the fact that Adams was not convicted or even charged with the primary offense defeats the basis for his own conviction. Brief for Appellant at 15–17 ("Brewer cannot ... be guilty as an accomplice to a non criminal act by another, who himself is not a principal to the crime."). In support of his position, Brewer cites *Commonwealth v. Murphy*, 577 Pa. 275, 844 A.2d 1228, 1234 (2004), for the proposition that "to be convicted as an accomplice, there must be an underlying criminal act by a principal." Brief for Appellant at 16.

¶ 8 Brewer's argument does not reflect the current state of the law in this Commonwealth. In point of fact, the Pennsylvania Crimes Code specifies that a defendant may be convicted as an accomplice notwithstanding the absence of any corresponding prosecution of the principal. The operative sections provide as follows:

§ 306. Liability for conduct of another; complicity

\* \* \* \* \* \*

(c) Accomplice defined.—A person is an accomplice of another person in the commission of an offense if:

(1) with the intent of promoting or facilitating the commission of the offense, he:

(i) solicits such other person to commit it; or

(ii) aids or agrees or attempts to aid such other person in planning or committing it; or

(2) his conduct is expressly declared by law to establish his complicity.

\* \* \* \* \* \*

(d) Culpability of accomplice.—When causing a particular result is an element

of an offense, an accomplice in the conduct causing such result is an accomplice in the commission of that offense, if he acts with the kind of culpability, if any, with respect to that result that is sufficient for the commission of the offense.

\* \* \* \* \* \*

(g) Prosecution of accomplice only.—An accomplice may be convicted on proof of the commission of the offense and of his complicity therein, though the person claimed to have committed the offense has not been prosecuted or convicted or has been convicted of a different offense or degree of offense or has an immunity to prosecution or conviction or has been acquitted.

18 Pa.C.S. § 306(c), (d), (g).

¶ 9 In *Murphy*, our Supreme Court applied section 306, recognizing generally that:

two prongs must be satisfied for a defendant to be held guilty as an 'accomplice.' First, there must be evidence that the defendant intended to aid or promote the underlying offense. Second, there must be evidence that the defendant actively participated in the crime by soliciting, aiding, or agreeing to aid the principal.

*Murphy*, 844 A.2d at 1234 (internal citations omitted). The Court further specified that the defendant must have intended the consequence of his acts:

While these two requirements may be established by circumstantial evidence, a defendant cannot be an accomplice simply based on evidence that he knew about the crime or was present at the crime scene. There must be some additional evidence that the defendant intended to aid in the commission of the underlying crime, and then did or attempted to do so.

*Id.* (internal citations omitted). Notably, the Court did not address potential liability as an accomplice where the principal has not been charged, nor did it consider the legislature's pronouncement in section 306(g), allowing a defendant's prosecution as an accomplice without regard to charges against the principal. Given the plain language of section 306(g), we need not hesitate to affirm Brewer's conviction so long as his complicity in the elements of the "underlying crime" is proved beyond a reasonable doubt.

¶ 10 The underlying crime of Retaliation Against a Witness specifies the following elements:

§ 4953. Retaliation against witness, victim or party

 (a) Offense defined.—A person commits an offense if he harms another by any unlawful act or engages in a course of conduct or repeatedly commits acts which threaten another in retaliation for anything lawfully done in the capacity of witness, victim or a party in a civil matter.

18 Pa.C.S. § 4953(a). Under this provision, the defendant may be convicted, *inter alia,* if he "engaged in a course of conduct which threaten[s] another in retaliation for anything lawfully done In the capacity of a witness or victim." *Ostrosky,* 866 A.2d at 428. Correspondingly, a defendant convicted as an accomplice need merely be shown to have solicited or aided in a course of conduct that he intended to aid or promote retaliation for the victim's lawful activities. *See Murphy,* 844 A.2d at 1234. Conviction or even prosecution of the principal offender need not be shown. *See* 18 Pa.C.S. § 306(g); *cf. Commonwealth v. Fremd,* 860 A.2d 515, 521 (Pa.Super.2004) (concluding that "the path of prosecution, or non-prosecution, of a defendant's alleged co-conspirator(s) is irrelevant as to the prosecution of the defen-

dant[;]" conviction for conspiracy may be sustained so long as defendant was one of two or more persons to commit or plan a crime).

¶ 11 In this case the evidence is more than sufficient to establish Brewer's complicity in the demotion and/or discharge of Officers Kocon and Tuite in retaliation for their respective roles in reporting and investigating his theft of cash from the Wilkinsburg police safe. Although Brewer disputes the significance of the e-mails on which the Commonwealth relied, when considered in their temporal context and in view of the adverse consequences that befell the two officers immediately after Brewer wrote them, they are more than sufficient to sustain his conviction.

¶ 12 Brewer wrote the first message, reproduced *supra,* on his last day in office, expounding to a colleague of disciplinary action to be taken the following day against "[o]ur two lieutenants," at the same time assuring her that "I am letting the Mayor run with the ball so as not to appear retaliatory." Although Brewer's successor waited several days to take the action Brewer specified, on December 26, he notified the officers from CID that within a mere four days they would be transferred to patrol. On December 27, the day following the new chief's action, Brewer further extolled his colleague that the decision he claimed to have made in his December 21 e-mail had been executed, and he gloated at the consequence to the officers affected: "We cleaned out CID and transferred all back to the road; demoted 1 Lt and looks like termination for the other (4 months short of pension)." Notably, Brewer used the collective pronoun "we," acknowledging his complicity in the execution of the acts. His first message having both recognized their retaliatory nature and taken credit for planning them, the elements of accomplice liability

for retaliation against a witness are thus fulfilled. By his own admission, Brewer planned and participated in a course of conduct carried out by his successor, recognizing its retaliatory nature. Moreover, given the tone of his messages, the jury might reasonably infer that he reveled in the adversity he had succeeded in imposing on the officers, which he perceived as "payback" for their roles in the investigation that had forced his resignation. Albeit circumstantial, the evidence is therefore sufficient to dispel the presumption of innocence on the retaliation charge. Consequently, Brewer's first question does not provide grounds for relief.

 ¶ 13 By way of his second question, Brewer challenges the trial court's decision to allow expert testimony on appropriate methods of securing confiscated funds in police custody, seeking an award of new trial. Brewer argues that in admitting evidence bearing on "reasonable" conduct and methods in documenting and securing the evidence, the court effectively diminished the standard of proof for his theft conviction, allowing the factfinder to convict him for mere negligence. Brief for Appellant at 23–25. Significantly, Brewer cites no authority to support his conclusion that the trial court admitted this evidence in error. Accordingly he has failed to sustain his burden to demonstrate his entitlement to relief. *See Miller v. Miller,* 744 A.2d 778, 788 (Pa.Super.1999) ("It is the Appellant who has the burden of establishing his entitlement to relief by showing that the ruling of the trial court is erroneous under the evidence or the law.").

 ¶ 14 The deficiency of Brewer's argument on this point notwithstanding, we conclude that the expert testimony the court admitted does not provide grounds for the grant of a new trial. "The admission of expert testimony is a matter of discretion [for] the trial court and will not

be remanded, overruled or disturbed unless there was a clear abuse of discretion." *Blicha v. Jacks,* 864 A.2d 1214, 1218 (Pa.Super.2004); *see also Commonwealth v. Drumheller,* 570 Pa. 117, 808 A.2d 893, 904 (2002) (concerning admissibility of evidence generally). Expert testimony may be admitted "[i]f scientific, technical or other specialized knowledge beyond that possessed by a layperson will assist the trier of fact to understand the evidence or to determine a fact in issue[.]" Pa.R.E. 702.

¶ 15 In this matter, the court admitted the testimony of Joseph Latta, a retired lieutenant in the Burbank, California Police Department, and president of the International Association of Property and Evidence. Latta testified in part to refute Brewer's assertion that he removed cash from designated evidence envelopes and commingled it following a suggestion that Latta had allegedly made as a presenter at seminar on evidence. Latta testified further concerning practices that Brewer should have followed to safeguard the chain of custody of the cash in his position and explained, "hypothetically," that the practices he actually followed were professionally unreasonable. N.T., 6/20/03, at 20–21. Significantly, Latta's testimony was not introduced to establish Brewer's commission of the theft, but rather to promote the jury's recognition that Brewer "had destroyed the recordkeeping and accountability of Wilkinsburg's evidence-collecting system—a system that had been maintained in the same orderly fashion by the four chiefs immediately preceding [him], . . .—and then tried to use the disruption of that system as a defense to the theft of $6000 in evidence money." Brief for Appellee at 27. Accordingly, Latta's testimony was not introduced to establish the Commonwealth's case-in-chief, but rather, to undermine Brewer's defense.

We find no grounds to declare the admission of such testimony either a deviation from the applicable rule of evidence or an abuse of the trial court's discretion. *See* Pa.R.E. 702; *cf. Commonwealth v. Doyen*, 848 A.2d 1007, 1014 (Pa.Super.2004) (concluding that trial court properly admitted testimony of state trooper in drug prosecution to explain the coded and guarded language used by drug dealers).

¶ 16 For the foregoing reasons, we affirm Brewer's judgment of sentence.

¶ 17 Judgment of sentence AFFIRMED.