J-A18009-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| | : | |
| v. | : | |
| | : | |
| | : | |
| MICHAEL JAMES BROOKS | : | |
| | : | |
| Appellant | : | No. 1318 WDA 2019 |

Appeal from the Judgment of Sentence Entered June 27, 2019
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0014713-2018

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| | : | |
| v. | : | |
| | : | |
| | : | |
| MICHAEL JAMES BROOKS | : | |
| | : | |
| Appellant | : | No. 1319 WDA 2019 |

Appeal from the Judgment of Sentence Entered June 27, 2019
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0012609-2018

BEFORE: BENDER, P.J.E., DUBOW, J., and NICHOLS, J.

MEMORANDUM BY BENDER, P.J.E.:             FILED SEPTEMBER 24, 2020

Appellant, Michael James Brooks, appeals from the aggregate judgment of sentence of two to four years' imprisonment, followed by four years' probation, imposed after he was convicted, in two separate cases, of displaying obscene/sexual materials (18 Pa.C.S. § 5903(a)(1)), harassment (18 Pa.C.S. § 2709(a)(4)), terroristic threats (18 Pa.C.S. § 2706(a)(1)), and

intimidation of witnesses (18 Pa.C.S. § 4952(a)(1)). After careful review, we affirm.

The trial court set forth a detailed summary of the facts of this case, which we need not reproduce herein. See Trial Court Opinion (TCO), 1/9/20, at 5-9. Briefly, Appellant was arrested and charged with displaying obscene/sexual materials and harassment after he posted sexually explicit photographs of his former girlfriend on Facebook. He then threatened to kill the victim in open court after she testified at his preliminary hearing on those charges, resulting in his being charged with the additional offenses of terroristic threats and intimidation of witnesses.

Following a non-jury trial on April 9, 2019, Appellant was convicted of the above-stated offenses. On June 27, 2019, he was sentenced as set forth supra, and he filed a timely motion for reconsideration of his sentence on July 1, 2019. The court denied that motion on July 25, 2019. Appellant then filed timely notices of appeal at each docket number, and this Court sua sponte consolidated his appeals on September 20, 2019. Appellant also complied with the trial court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Herein, he presents four issues for our review:

> I. Did the trial court err when it permitted the introduction of Facebook postings when the evidence is hearsay and the Commonwealth failed to authenticate the Facebook postings as required under Pa.R.E. 901?
>
> II. Was the evidence insufficient in proving beyond a reasonable doubt on displaying obscene/sexual material and harassment in

that the evidence was extremely weak that the posts were in fact made by [Appellant]?

III. Was the evidence insufficient in proving beyond a reasonable doubt on intimidation of witnesses since [Appellant's] statements occurred after his preliminary hearing was concluded?

IV. Did the trial court abuse its discretion when it imposed two consecutive sentences that resulted in a manifestly excessive and unreasonable sentence without consideration of [Appellant's] rehabilitative needs, or his nature and characteristics instead focused primarily on the severity of the crime and the impact on the victim?

Appellant's Brief at 7 (unnecessary capitalization and emphasis omitted).

In reviewing these four issues, we have assessed the certified record, the briefs of the parties, and the applicable law. Additionally, we have considered the thorough opinion of the Honorable Beth A. Lazzara of the Court of Common Pleas of Allegheny County. We conclude that Judge Lazzara's well-reasoned decision accurately disposes of the issues presented by Appellant.[1] Accordingly, we adopt her opinion as our own and affirm Appellant's judgment of sentence for the reasons set forth therein.

Judgment of sentence affirmed.

_____

[1] We note that Judge Lazzara addresses a weight-of-the-evidence claim that Appellant has abandoned on appeal. See TCO at 20-21. We do not adopt, or express any position on, Judge Lazzara's disposition of that issue.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/24/2020

# IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA
## CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA,

v.

MICHAEL JAMES BROOKS,

Defendant.

CC Nos. 2018-12609
2018-14713

OPINION

**ORIGINAL**
Criminal Division
Dept. Of Court Records
Allegheny County, PA

BETH A. LAZZARA, JUDGE
Court of Common Pleas

Copies Sent To:

Mike W. Streily, Esq.
Office of the District Attorney
401 Courthouse
Pittsburgh, PA 15219

Christine M. Selden, Esq.
Office of the Public Defender
400 County Office Bldg
542 Forbes Avenue
Pittsburgh, PA 15219

# IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA,

vs.

MICHAEL JAMES BROOKS,

Defendant.

CRIMINAL DIVISION

CC Nos. 2018-12609
2018-14713

## OPINION

This is a direct appeal from the judgments of sentence entered on June 27, 2019, following a non-jury trial that took place at the above-captioned case numbers on April 9, 2019. At CC# 2018-12609, the Defendant was convicted of Display Obscene/Sexual Materials at Count One (1) (18 Pa. C.S.A. §5903(a)(1)) and Harassment at Count Two (2) (18 Pa. C.S.A. §2709(a)(4)). At CC# 2018-14713, the Defendant was convicted of Terroristic Threats at Count One (1) (18 Pa. C.S.A. § 2706(a)(1)) and Intimidation of Witnesses at Count Two (2) (18 Pa. C.S.A. § 4952(a)(1)). Sentencing was deferred to allow for the preparation of a Presentence Report ("PSR").

1

On June 27, 2019, the Defendant received a total aggregate sentence of two (2) to four (4) years of imprisonment, followed by four (4) years of probation. The Defendant also received 265 days of credit for time served. The Defendant filed a timely post-sentence motion to reconsider his sentence, which was heard and denied on July 25, 2019. This timely appeal followed.

On August 28, 2019, this court issued an Order directing the Defendant to file a Concise Statement of Matters Complained of on Appeal ("Concise Statement"). On December 6, 2019, after receiving two (2)[1] extensions of time, the Defendant filed a timely Concise Statement at each case number, raising several issues for review.

Specifically, at CC# 2018-12609, the Defendant sets forth the following allegations of error:

a. The trial court erred when it permitted the introduction of Facebook postings when the evidence is hearsay and the Commonwealth failed to authenticate the Facebook postings as required under Pa.R.E. 901. The Commonwealth did not have an IP address, did not establish who was the administrator of the account, failed to subpoena any records from Facebook, nor did it provide any other evidence sufficient to support a finding that the postings were what they claimed it to be, i.e., photographs

_____

[1] The Defendant was awaiting the receipt of transcripts in this case.

2

of the victim and Mr. Brooks, or even whether he had taken or posted the photographs and comments.

b. The evidence was insufficient in proving beyond a reasonable doubt on displaying obscene/sexual material and harassment in that there was not enough evidence that the posts were in fact made by him. Facebook is inherently susceptible to falsification, tampering or manipulation, and that the Facebook entry, allegedly authored by Mr. Brooks, could have easily been generated by someone else. There is potential for abuse, especially given the lack of proper authentication of the evidence. Additionally, there was no testimony from anyone who saw Mr. Brooks create the posts; there was no expert testimony relating to any search of Mr. Brooks' computer hard drive; there was not testimony regarding Mr. Brooks exclusive access to the Facebook account; nor was there any evidence from Facebook that linked the post to Mr. Brooks.

c. The verdict was against the weight of the evidence where it was based on insufficiently authenticated evidence rendering the evidence so weak and inconclusive to establish that Mr. Brooks made the postings to Facebook.

d. The trial court abused its discretion when it imposed a sentence that was manifestly excessive and unreasonable where a sentence of total confinement at Count 1 was imposed without consideration of Mr. Brooks rehabilitative needs, or his nature and characteristics. Mr. Brooks was found guilty of one M1 (an offense gravity score of 3) and one M3 (an offense gravity score of 1). His prior record score is three (3). The trial court sentenced Mr. Brooks to a term of total confinement of one (1) to (2) two years at Count 1 and one (1) year probation at Count 2. The trial court did not adequately consider the statutorily required factors by not following the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant. 42 Pa. C.S.A. §9721. Additionally, although the Court indicated it reviewed and considered the presentence report and its addendum, the record is silent on whether it was aware of the offense gravity scores, his prior record score, what the guideline ranges were and whether they were considered. Mr. Brooks is now 29 years old, has small children with whom he is involved in their lives and financially supports, and has considerable family

3

support. He presented several witnesses and also testified that he has a changed attitude. Instead, the Court ignored these factors and instead focused on the impact of the crime on the victim, even though she did not give a victim impact statement, and the seriousness of the offense.

At CC# 2018-14713, the Defendant raises the following challenges to his verdict and sentence:

a. The verdict was against the sufficiency of the evidence as to the conviction for intimidation of witnesses under 18 Pa.C.S.A. §4952(a)(1) in that the Commonwealth's evidence was that Mr. Brooks made his statement during or after his preliminary hearing on other charges. Hence, the statement was after the fact that the victim had already informed and/or reported any information to law enforcement, a prosecuting official or a judge.

b. The trial Court abused its sentencing discretion by sentencing Mr. Brooks to consecutive sentences at Counts 1 and 2, to his sentence at CC2018-12609, making an aggregate sentence of 2 to 4 years incarceration. Mr. Brooks' offense gravity score was 3 and his prior record is 3. Although the Court indicated it reviewed and considered the pre-sentence report and its addendum, there is nothing on the record whether the Court was aware of the offense gravity scores, the prior record score, what the guideline ranges were and whether the ranges considered, and no sentencing guidelines were filed. Additionally, the trial Court did not adequately consider *all* of the statutorily required factors by not following the general principle that while the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, it also is required to consider the rehabilitative needs of the defendant. 42 Pa. C.S.A. §9721. Here, the sentence fails to consider the rehabilitative needs of the defendant. Mr. Brooks is now 29 years old, has two young children with whom he is involved in their lives and financially supports, and has considerable family support. Instead, it appears that the Court focused

4

exclusively on the impact on the life of the victim, who made no victim impact statement, and the seriousness of the offenses at CC201812609.

The Defendant's contentions on appeal lack merit. The court respectfully requests that the Defendant's convictions and sentence be upheld for the reasons that follow.

## I.  FACTUAL BACKGROUND

On August 8, 2018, twenty-seven (27) year old Keshona Taylor was at work when she received a call from a family member prompting her to check her Facebook account. (Non-Jury Trial Transcript ("TT"), held 4/9/19, pp. 20, 22, 25-27, 29-30, 33, 35-36, 39). She discovered that three (3) sexually explicit photos of her had been publicly posted on the Defendant's Facebook account entitled "Splash God B.K." (TT, pp. 20, 22, 25-26, 31, 33, 35).  Ms. Taylor and the Defendant previously had dated, but they went through a "contentious" breakup sometime around June of 2018. (TT, pp. 20-21, 25). However, they were still connected on Facebook and "were keeping in contact." (TT, pp. 44-45).

5

During the course of their relationship, Ms. Taylor regularly communicated with the Defendant over the phone and through text messages. (TT, p. 22). In the two (2) years leading up to their relationship, Ms. Taylor also regularly communicated with the Defendant on Facebook under his "Splash God B.K" account. (TT, p. 22). Ms. Taylor knew that it was the Defendant who was communicating through this "Splash God B.K." account because the nature of their discussions involved content that was specific to their relationship, referencing, for example, plans they had made, things they had done together, and memories they had shared. (TT, p. 23). The "Splash God B.K." account also contained pictures of the Defendant. (TT, p. 25). When Ms. Taylor spoke with the Defendant on Facebook, she addressed the Defendant by his nickname, "B.K." (TT, p. 23). Ms. Taylor knew that "B.K." was the Defendant's nickname because the Defendant referred to himself as "B.K.," responded to the name "B.K.", and was called "B.K." by his "friends, his girlfriend, everybody." (TT, p. 24). "Nobody calls him Michael." (TT, p. 24).

When Ms. Taylor accessed her account on August 8, 2018, she saw that the Defendant had posted three (3) sexual and incredibly intimate photographs of her on his "Splash God B.K" account that same day. (TT, pp. 25-27, 29-30, 32); (Commonwealth Exhibits 1 through 3). Ms. Taylor described Commonwealth's Exhibit 1 as a picture of her "bent over, shaking

6

my butt." (TT, p. 26). Ms. Taylor was able to recognize that it was her because the picture was taken at her mother's house before she had passed away. (TT, p. 27). The Defendant also had captioned the photograph in Commonwealth's Exhibit 1 in a way that made Ms. Taylor's identity obvious. (TT, p. 27). The Defendant had written, "somebody please wife this fat, nasty bitch so she can get off my dick, please. Anyone – anyone. Bitch so miserable and want my bitch's life so bad. This is nasty-ass Keshona. I don't care. I'm a savage." (TT, p. 27). Ms. Taylor only performed that sexual act for the Defendant, but she was unaware that he was recording her at the time. (TT, p. 28).

Ms. Taylor described the second photograph that was posted on the "Splash God B.K." account that day as a "picture of him opening up my vagina." (TT, pp. 31, 33); (Commonwealth Exhibit 2). Because of all of the time that they had spent together and the sexual nature of their relationship, Ms. Taylor recognized the hand in the photograph as the Defendant's hand, and she was certain that it was her anatomy depicted in the picture. (TT, pp. 31-32). The Defendant captioned Commonwealth's Exhibit 2 with "hairy-ass butt" and a laughing emoji. (TT, p. 32). No one else was ever present taking photographs when Ms. Taylor and the Defendant engaged in sex acts. (TT, p. 32).

7

Ms. Taylor described the third photograph that was posted by "Splash God B.K." as a "picture of me giving him oral sex." (TT, p. 34); (Commonwealth's Exhibit 3). She recognized herself, as well as the Defendant's penis, in that photograph because she was the one who took that picture. (TT, pp. 34, 43-44). The Defendant had captioned the photograph with, "bitch sucked dick for $50," and he posted it on August 8, 2018, the same day as the other pictures. (TT, p. 35). After viewing these sexually charged and graphic photos of herself on the Defendant's Facebook page, Ms. Taylor turned the pictures over to the police, and charges were subsequently filed against the Defendant. (TT, p. 36).

On October 4, 2018, the Defendant had his preliminary hearing for the charges relating to the August 8, 2018 incident. (TT, p. 37). After Ms. Taylor testified, the Defendant looked directly at Ms. Taylor and repeatedly threatened to kill her, while she was still on the witness stand. (TT, pp. 39, 67-70, 77, 79-80). Ms. Taylor heard and saw the Defendant make the death threats which were made after she had testified, in the presence of the magistrate judge and Officer Duncan. (TT, pp. 39, 45-46, 68-69, 75, 77, 80). The Defendant had to be restrained by a constable, who "grabbed him and began taking him to the back room." (TT, pp. 80-81).

8

Officer Christopher Duncan, with the Wilkinsburg Police Department, was in the courtroom at the time and corroborated the fact that the Defendant threatened Ms. Taylor's life in open court. He testified that "[f]ollowing the Judge's decision, while Ms. Taylor was still up on the stand, Mr. Brooks became irate and he stated I'm going to kill this bitch, and then he stated if they let me out of jail, I'm going to kill this bitch." (TT, pp. 72-73, 77). Ms. Taylor testified that these threats made her feel afraid. (TT, p. 68).

As a result of the Defendant's volatile behavior, he was taken back to the holding cell with the other jailers, but Ms. Taylor and Officer Duncan heard the Defendant continue to make repeated threats along the way, saying "I'm going to kill this bitch when I get out of jail; I'm going to kill you." (TT, pp. 68-69, 77-78). The Defendant has two (2) friends that had passed away and Ms. Taylor recalled that he kept "swearing on their names" that he was going to kill her. (TT, p. 69).

9

## II.  DISCUSSION

### A. The Facebook postings were sufficiently authenticated through circumstantial evidence and, therefore, properly admitted.

The Defendant contends that this court erred in overruling his objection relating to the authentication of the Facebook photographs. He argues that the Commonwealth failed to properly authenticate this evidence because it "did not have an IP address, and did not establish who was the administrator of the account, [it] failed to subpoena any records from Facebook, nor did it provide any other evidence sufficient to support a finding that the postings were what they claimed it to be . . . ." (Concise Statement, filed at CC# 2018-12609, p. 2).

It is well-established that the "admission of evidence is committed to the sound discretion of the trial court, and a trial court's ruling regarding the admission of evidence will not be disturbed on appeal unless that ruling reflects manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support to be clearly erroneous." Commonwealth v. Moser, 999 A.2d 602, 605 (Pa. Super. 2010) (citation omitted).

10

Our appellate court in <u>Commonwealth v. Danzey</u>, 210 A.3d 333, 337 (Pa. Super. 2019) recently reiterated the authentication requirements pursuant to Pa.R.E. 901:

> [A]uthentication is required prior to admission of evidence. The proponent of the evidence must introduce sufficient evidence that the matter is what it purports to be. Pa.R.E. 901(a). Testimony of a witness with personal knowledge that a matter is what it is claimed to be can be sufficient. Pa.R.E. 901(b)(1). Evidence that cannot be authenticated by a knowledgeable person, pursuant to subsection (b)(1), may be authenticated by other parts of subsection (b), including circumstantial evidence pursuant to subsection (b)(4). Pa.R.E. 901(b)(4). Under Rule 901(b)(4), evidence may be authenticated by *"Distinctive Characteristics and the Like*. The appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances."

(emphasis in original).

With respect to the authentication of electronic communications, courts have explained that "authentication of electronic communications, like documents, requires more than mere confirmation that the number or address belonged to a particular person. Circumstantial evidence, which tends to corroborate the identity of the sender, is required." <u>Commonwealth v. Koch</u>, 39 A.3d 996, 1005 (Pa. Super. 2011).

11

In *Commonwealth v. Mangel*, 181 A.3d 1154 (Pa. Super. 2018), the court considered the authentication of Facebook communications and offered the following guidance:

> Initially, authentication [of] social media evidence is to be evaluated on a case-by-case basis to determine whether or not there has been an adequate foundational showing of its relevance and authenticity. Additionally, the proponent of social media evidence must present direct or circumstantial evidence that tends to corroborate the identity of the author of the communication in question, such as testimony from the person who sent or received the communication, or contextual clues in the communication tending to reveal the identity of the sender.

Turning to our facts, the testimony of Keshona Taylor was sufficient to establish that the Defendant owned the Facebook account "Splash God B.K." Ms. Taylor testified that: (1) she had communicated with the Defendant through the "Splash God B.K." account for two years leading up to their relationship; (2) "everybody" called the Defendant "B.K." and no one called him Michael; and (3) the "Splash God B.K." account contained pictures of the Defendant. (TT, pp. 22-24). Ms. Taylor also was confident that the Defendant owned this account given the content of their communications and the fact that they discussed things that only the two of them had knowledge of. (TT, pp. 22-24).

12

Considering the overall context surrounding the photographs and the circumstances that existed at the time of the posting, Ms. Taylor's testimony was also sufficient to establish the Defendant's identity as the author of the sexually graphic postings. Ms. Taylor testified that she and the Defendant had recently dated and that they had a "contentious" breakup barely two (2) months prior to the postings. (TT, p. 25). Ms. Taylor identified each of their private parts in the pictures and confirmed that the majority[2] of the photographs were taken on the Defendant's cell phone, during a time that no one else was present. (TT, pp. 25, 32, 34).

Furthermore, the photographs were all posted on the same day, and the demeaning captions accompanying each picture were consistent with the vitriol of an ex-boyfriend. (TT, pp. 25, 27, 32, 35). Indeed, one of the captions even accused Ms. Taylor of being jealous of the Defendant's new girlfriend. (TT, p. 27) ("[S]omebody please wife this fat, nasty bitch so she can get off **my** dick, please. Anyone – anyone. Bitch so miserable and want **my** bitch's life so bad. This is nasty-ass Keshona. **I don't care. I'm a savage.**") (emphasis added). The author of the posts referred to himself in the first person, and just like in Danzey, the three (3) postings all

---

[2] Ms. Taylor testified that the photograph in Commonwealth's Exhibit 3 was taken on her cell phone and that the Defendant had access to the picture because he took her cell phone. (TT, p. 47).

13

"expressed consistent themes in a consistently vulgar voice," and the postings depicted sexual acts that Ms. Taylor only engaged in with the Defendant. Danzey, *supra*, at 340.

Accordingly, "the contextual clues in the posts, taken together with the testimony provided by" Ms. Taylor, supported the conclusion that the Defendant was the author of the postings. To the extent that the Defendant challenges the admission of these photographs on hearsay grounds, that claim also lacks merit for the same reasons outlined in Danzey. To be sure, "the posts were not introduced for purpose of proving the truth of the matter asserted therein" – that Ms. Taylor was, in fact, a "nasty bitch" with a "hairy-ass butt" who "sucked dick for $50." (TT, pp. 27, 32, 35). Danzey, *supra*, at 341. "Rather, introduction of the posts established [the Defendant's] state of mind, and related directly to consideration of the charged offenses" of Displaying Obscene Material and Harassment. Id. at 341.

14

## B. The Commonwealth's evidence was more than sufficient to support the Defendant's convictions for Displaying Obscene/Sexual Material, Harassment, and Intimidation of Witnesses.

The standard of review for challenges to the sufficiency of evidence is well-settled. Our appellate court has explained the standard as follows:

> As a general matter, our standard of review of sufficiency claims requires that we evaluate the record "in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence." Commonwealth v. Widmer, 744 A.2d 745, 751 (Pa. 2000). "Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt." Commonwealth v. Brewer, 876 A.2d 1029, 1032 (Pa. Super. 2005). Nevertheless, "the Commonwealth need not establish guilt to a mathematical certainty." Id.; see also Commonwealth v. Aguado, 760 A.2d 1181, 1185 (Pa. Super. 2000) ("[T]he facts and circumstances established by the Commonwealth need not be absolutely incompatible with the defendant's innocence"). Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances. See Commonwealth v. DiStefano, 782 A.2d 574, 582 (Pa. Super. 2001).
>
> The Commonwealth may sustain its burden by means of wholly circumstantial evidence. See Brewer, 876 A.2d at 1032. Accordingly, "[t]he fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence." Id. (quoting Commonwealth v. Murphy, 795 A.2d 1025, 1038–39 (Pa. Super. 2002)). Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a

reasonable doubt, the appellant's convictions will be upheld. See Brewer, 876 A.2d at 1032. Commonwealth v. Rahman, 75 A.3d 497, 500-01 (Pa. Super. 2013) (quoting Commonwealth v. Pettyjohn, 64 A.3d 1072 (Pa. Super. 2013)) (citations omitted).

It is well-established that "the trier of fact, who determines credibility of witnesses and the weight to give the evidence produced, is free to believe all, part, or none of the evidence." Commonwealth v. Brown, 701 A.2d 252, 254 (Pa. Super. 1997).

Viewing the evidence in the light most favorable to the Commonwealth as verdict-winner, and taking into account all reasonable inferences that may be drawn therefrom, it is clear that, since the Defendant's identity as the author of the Facebook posts was established, the evidence was more than sufficient to sustain the Defendant's convictions for Displaying Obscene/Sexual Material, Harassment and Intimidation of Witnesses.

Pursuant to 18 Pa.C.S.A § 5903(a)(1): No person, knowing the obscene character of the materials or performances involved, shall:

(1)    display or cause or permit the display of any explicit sexual materials as defined in subsection (c) in or on any window, showcase, newsstand, display rack, billboard, display board, viewing screen, motion picture screen, marquee or similar place in such manner that the display is visible from any public street,

16

highway, sidewalk, transportation facility or other public thoroughfare, or in any business or commercial establishment where minors, as a part of the general public or otherwise, are or will probably be exposed to view all or any part of such materials.

The Commonwealth presented the testimony of the victim, Ms. Taylor, who credibly and convincingly established beyond a reasonable doubt that the Defendant publicly posted explicit, sexually graphic photographs of her on Facebook, a public forum. Thus, the evidence was more than sufficient to support the Defendant's conviction under § 5903(a)(1).

Pursuant to 18 Pa. C.S.A § 2709(a)(4), "a person commits the crime of harassment when, with intent to harass, annoy or alarm another, the person (4) communicates to or about such other person any lewd, lascivious, threatening or obscene words, language, drawings or caricatures." The Facebook pictures and accompanying captions that the Defendant posted on his account were lewd, lascivious, and obscene communications that were sent both to and about Ms. Taylor, and were posted with the obvious intent of harassing, annoying, and alarming her. Thus, the evidence was sufficient to support the Defendant's conviction under §2709(a)(4).

17

Finally, the Intimidation of Witnesses statute provides that:

A person commits an offense if, with the intent to or with the knowledge that his conduct will obstruct, impede, impair, prevent or interfere with the administration of criminal justice, he intimidates or attempts to intimidate any witness or victim to: (1) Refrain from informing or reporting to any law enforcement officer, prosecuting official or judge concerning any information, document or thing relating to the commission of a crime.

18 Pa.C.S.A.§ 4952(a)(1).

As noted, the Defendant repeatedly threatened to kill Ms. Taylor after she testified at his preliminary hearing, while she was still on the witness stand, and Ms. Taylor felt afraid after her life was threatened. The Defendant made these death threats in an open courtroom, after his charges were held for court, with full awareness that his case would continue to be pursued in Common Pleas Court.

The Defendant, however, argues that the evidence was insufficient to support this conviction because the threats came after Ms. Taylor "had already informed and/or reported any information to law enforcement, a prosecuting official or a judge." (Concise Statement, pp. 2-3). This argument is wholly without merit and overlooks the fact that Ms. Taylor's testimony would still be required to secure convictions against the Defendant in Common Pleas Court. The Defendant's repeated death threats clearly were made with the intent to dissuade Ms. Taylor from providing any further

18

information to, and cooperation with, the Commonwealth in preparation for and at the time of trial. The court notes that the death threats also evinced the Defendant's consciousness of guilt for his conduct in publicly disseminating the sexually graphic photographs of Ms. Taylor.

The Commonwealth need not prove the Defendant's guilt to a mathematical certainty, and it may prove its case by means of wholly circumstantial evidence. Brewer, *supra*, at 1032. This is not a case where the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances. *See* Commonwealth v. Watley, 81 A.3d 108, 115 (Pa Super. 2013).

Here, properly viewing the evidence in the light most favorable to the Commonwealth, the circumstantial evidence was sufficient to prove that: (1) the Defendant was responsible for publicly posting obscene and sexual pictures of the victim; (2) the Defendant's postings were intended to alarm, annoy, and harass the victim; and (3) the Defendant intended to discourage the victim from securing convictions against him when he threatened to kill her several times in open court after she testified against him at his preliminary hearing.

19

C. **The Defendant's challenge to the weight of the evidence should be deemed waived on appeal because it was not raised at the time of sentencing or in a post-sentence motion.**

For the first time on appeal, the Defendant seeks to challenge the weight of the evidence relating to his convictions for Displaying Obscene/Sexual Material and Harassment. As explained by our appellate court in Commonwealth v. Thompson, 93 A.3d 478, 490 (Pa. Super. 2014):

> [A] weight of the evidence claim must be preserved either in a post-sentence motion, by a written motion before sentencing, or orally prior to sentencing. Pa.R.Crim.P. 607; Commonwealth v. Priest, 18 A.3d 1235, 1239 (Pa. Super. 2011). Failure to properly preserve the claim will result in waiver, even if the trial court addresses the issue in its opinion. Commonwealth v. Sherwood, 982 A.2d 483, 494 (Pa.2009).

The Defendant did not raise a weight claim at any time before or during sentencing, nor did he raise the claim in his post-sentence motion. Rather, the Defendant's post-sentence motion challenged the imposition of a consecutive sentencing scheme and sought reconsideration of the court's decision to not make a Boot Camp recommendation. (Motion to Reconsider, filed 7/1/19, ¶¶ 2-4).

20

At the hearing held on the post-sentence motion, the defense argument focused solely on the sentencing issues and reiterated the requests made in the written motion. (Post-Sentence Motion Hearing ("PSM"), held 7/25/19, pp. 3-6) ("The defendant's position in this case is it only asks for either – you to reconsider the consecutive nature of the sentences and run them concurrent. . . . I would [also] ask you to reconsider your sentence and your denial of the Boot Camp in particular . . . ."). Accordingly, the Defendant failed to preserve his challenge to the weight of the evidence because it was not raised prior to the filing of his Concise Statement. As such, this court respectfully requests that this issue be deemed waived on appeal.

## D. The Defendant's sentencing scheme was not manifestly unreasonable under the circumstances and the court considered all relevant statutory factors in imposing sentence.

### Failure to Raise Substantial Question

It is well-settled that "[s]entencing is a matter vested in the sound discretion of the sentencing judge and a sentence will not be disturbed on appeal absent a manifest abuse of discretion." Commonwealth v. Mouzon, 828 A.2d 1126, 1128 (Pa. Super. 2003). "To constitute an abuse of discretion, the sentence imposed must either exceed the statutory limits or

21

be manifestly excessive." Commonwealth v. Gaddis, 639 A.2d 462, 469 (Pa. Super. 1994) (citations omitted).

To that end, "an abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous." Commonwealth v. Greer, 951 A.2d 346, 355 (Pa. 2008). "In determining whether a sentence is manifestly excessive, the appellate court must give great weight to the sentencing court's discretion." Mouzon, supra, at 1128. This deferential standard of review acknowledges that the sentencing court is "in the best position to view the defendant's character, displays of remorse, defiance, indifference, and the overall effect and nature of the crime." Commonwealth v. Allen, 24 A.3d 1058, 1065 (Pa. Super. 2011) (internal citations omitted).

The sentencing claims raised in the Defendant's Concise Statements seek to challenge the amount of weight afforded to certain mitigating factors, as well as the imposition of a consecutive sentencing scheme. (Concise Statement, CC#2018-12609, p. 3); (Concise Statement, CC# 2018-14713, p. 3). As such, the Defendant's sentencing arguments challenge the discretionary aspects of sentencing. The court notes that

22

"[t]he right to appeal a discretionary aspect of sentence is not absolute."

Commonwealth v. Martin, 727 A.2d 1136, 1143 (Pa. Super. 1999).

A defendant "challenging the discretionary aspects of his sentence must invoke [appellate] jurisdiction by satisfying a four-part test."

Commonwealth v. Moury, 992 A.2d 162, 170 (Pa. Super. 2010). In conducting the four-part test, the appellate court analyzes

> (1) whether appellant has filed a timely notice of appeal, see Pa. R. A. P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, see Pa. R. Crim. P. [708]; (3) whether appellant's brief has a fatal defect, Pa. R. A. P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa. C. S. A. § 9781(b).

Id. at 170. "The determination of whether there is a substantial question is made on a case-by-case basis, and [the appellate court] will grant the appeal only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." Commonwealth v. Haynes, 125 A.3d 800, 807 (Pa. Super. 2015).

23

Our courts have "held on numerous occasions that a claim of inadequate consideration of [mitigating] factors does not raise a substantial question for [] review." Haynes, supra, at 807; Commonwealth v. Buterbaugh, 91 A.3d 1247, 1266 (Pa. Super. 2014). Furthermore, "a sentencing court generally has discretion to impose multiple sentences concurrently or consecutively, and a challenge to the exercise of that discretion does not ordinarily raise a substantial question." Commonwealth v. Raven, 97 A.3d 1244, 1253 (Pa. Super. 2014). Moreover, "bald claims of excessiveness due to the consecutive nature of sentences imposed will not raise a substantial question." Commonwealth v. Dodge, 77 A.3d 1263, 1270 (Pa. Super. 2013). Rather, "[t]he imposition of consecutive, rather than concurrent, sentences may raise a substantial question in only the most extreme circumstances, such as where the aggregate sentence is unduly harsh, considering the nature of the crimes and the length of imprisonment." Moury, supra, at 171-72.

Respectfully, the reviewing court should find that the Defendant has failed to raise a substantial question for review of his sentence. The Defendant received a standard range sentence at each case. These sentences were consistent with the sentencing provisions of the Sentencing Code, and they did not conflict with the fundamental norms that underlie the sentencing process. However, should the Superior Court conclude that there

24

exists a substantial question as to the appropriateness of the Defendant's sentencing scheme, the sentences were justified by the totality of the circumstances in this case.

*Reasonableness of the Sentences Imposed*

With respect to CC# 2018-12609, the Defendant's sentencing guidelines at Count One (1) – Displaying Obscene/Sexual Materials, called for a sentence of 6-16 months of imprisonment in the standard range. The Defendant was sentenced to a period of one (1) to two (2) years of imprisonment, followed by a two (2) year term of probation to commence upon his release from imprisonment. (Sentencing Transcript ("ST"), held 6/27/19, p. 34). At Count Two (2) – Harassment, the guidelines called for a sentence of RS-6 months. The Defendant was sentenced to a one (1) year period of probation, to be served consecutively to the term of probation imposed at Count One (1). (ST, p. 34). Thus, the total sentence at this case number was one (1) to two (2) years of imprisonment, to be followed by three (3) years of probation.

With respect to CC# 2018-14713, the Defendant's guidelines at Count One (1) – Terroristic Threats, called for a sentence of 6-16 months of imprisonment in the standard range. The Defendant was sentenced to a

25

period of one (1) to two (2) years imprisonment, with a consecutive two (2) year period of probation to follow. (ST, p. 27). The Defendant's guidelines for his conviction at Count Two (2) – Intimidation of Witnesses, called for a sentence of 12 months of imprisonment in the standard range. The Defendant was sentenced to a period of two (2) years of probation, which was ordered to run consecutive to the probation imposed at Count One (1). (ST, p. 28). The court further ordered that the terms of incarceration imposed at each case run consecutively to one another. (ST, p. 34). The probationary terms imposed at CC# 2018-14713 were ordered to run concurrently with the probation imposed at CC# 2018-12609.

Accordingly, the Defendant's total aggregate sentence was two (2) to four (4) years of imprisonment, followed by four (4) years of probation. Despite the Defendant's sentences being squarely within the standard range of the guidelines at each case number, he contends that the sentences were manifestly excessive and unreasonable because they were "imposed without consideration of Mr. Brooks [sic] rehabilitative needs, or his nature and characteristics." (Concise Statement, p. 3).

26

The Defendant also maintains that this court failed to consider the statutorily required factors under 42 Pa.C.S.A. § 9721, ignored certain mitigating factors, and focused solely on the seriousness of the offense and the impact on the victim. (Concise Statement, p. 3). Notwithstanding the fact that the Defendant actually received a standard range sentence at each case, he further argues that it was unclear whether this court "was aware of the offense gravity scores, his prior record score, what the guideline ranges were and whether they were considered," because this court did not explicitly recite the fact that it had reviewed the guidelines prior to sentencing. (Concise Statement, p. 3). The Defendant's claims lack merit.

Initially, the court notes that it had the benefit of a Pre-Sentence Report to aid in its sentencing determination. Pursuant to its consistent practice, the court carefully reviewed this report three (3) times in preparation for sentencing – once when it first received the report, then on the day before sentencing, and then again on the morning of the sentencing. (ST, p. 5). Our appellate court recently has reiterated the presumption afforded by the existence of pre-sentence reports:

> Where pre-sentence reports exist, **we shall continue to presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors.** A presentence report constitutes the record and speaks for itself. In order to dispel any lingering doubt as to

27

our intention of engaging in an effort of legal purification, **we state clearly that sentencers are under no compulsion to employ checklists or any extended or systematic definitions of their punishment procedure.** Having been fully informed by the pre-sentence report, the sentencing court's discretion should not be disturbed.

Commonwealth v. Conte, 198 A.3d 1169, 1177 (Pa. Super. 2018) (quoting Commonwealth v. Devers, 519 Pa. 88, 546 A.2d 12, 18 (1988)) (emphasis added).

Turning to the Defendant's assertion that the record is silent as to this court's awareness of the relevant guideline information, this court represents that it was fully aware of the applicable guidelines in this case, as it is at every sentencing. A "sentencing court is not required to recite on the record the guideline sentencing range, as long as the record demonstrates the court's recognition of the applicable sentencing range and the deviation of sentence from that range." Commonwealth v. Perry, 32 A.3d 232, n. 7 (Pa. 2011). As noted, the court did not deviate from the guidelines, and the record demonstrates this court's recognition of the applicable sentencing range by way of the fact that it imposed standard range sentences at each case.

28

Moreover, notwithstanding the Defendant's assertions to the contrary, this court spent a significant amount of time weighing all of the relevant statutory factors in determining the appropriate sentence in this case. 42 Pa. C.S.A. §9721(b). In addition to giving meaningful consideration to the Defendant's background, history, and need for rehabilitation, the court also took into account the arguments of counsel, the victim impact statement, testimony from the Defendant's family, and the Defendant's allocution to the court. (ST, pp. 6-23). All of these factors were further weighed against the seriousness of the offense and the need to protect the public.

Indeed, the Defendant's conduct which gave rise to the charges at CC# 2018-12609 is a reprehensible crime, a breach of the utmost trust that one places in an intimate partner, and a revolting display of the contempt in which the Defendant held Ms. Taylor. For Ms. Taylor to be at work when she found out -- from a relative no less -- that incredibly graphic photos of her had been posted online for the world to see was traumatic in and of itself. For Ms. Taylor to have to identify, in open court, pictures of her vagina and her performing sexual acts only added insult to injury. The court will not rehash its sentencing justification as it provided a lengthy rationale at the time of sentencing and at the post-sentence motion hearing. (ST, pp. 23-27); (PSM, pp. 5-6). The court will note, however, that it found the

Defendant's "show of remorse" to be completely disingenuous and self-serving.

The amount of humiliation and trauma that the Defendant has caused Ms. Taylor was best explained by Ms. Taylor herself in her Victim Impact Statement,[3] which was relayed through an investigator:

> [Ms. Taylor] noted that the defendant's actions have had a devastating affect on her life to date. Initially, she was forced to quit her job "out of embarrassment" over the pictures which were viewed by many of her co-workers. Additionally, her 10-year old son viewed the pictures which forced them into counseling for a short time. She and her boyfriend "broke-up" over the photos/videos and she was finally forced into relocating due to the embarrassment and judgement [sic] of those around her and her son. The move cost her a total of $750 which she was forced to "come up with" to maintain her "sanity and piece [sic] of mind."

The Defendant's criminal conduct surrounding the Facebook posts was serious and concerning standing alone, but then the Defendant went even further, threatening Ms. Taylor's life after she had testified at his preliminary hearing, while she was still on the witness stand. The Defendant did not just utter a single stray threat, he brazenly and repeatedly told Ms. Taylor that he was going to kill her, in open court, in the presence of law enforcement, with full knowledge (if not intent) that the death threats could prevent her

---

[3] The court has attached the Victim Impact Statement to this Opinion as "Court Exhibit 1."

30

from providing further testimony against him and from pursuing convictions against him. The Defendant was so "irate" while he was repeatedly threatening to kill Ms. Taylor that he had to be restrained by a constable and escorted from the room. (TT, pp. 77, 80-81). And yet, even despite law enforcement intervention, he continued making death threats after being placed back in the holding cell with the other jailers. (TT, p. 77). The Defendant's inability to restrain himself, even in a court of law, showcases his anger issues, which further highlights the dangers that he poses to Ms. Taylor and the community as a whole.

The Defendant argues that a lesser sentence was warranted because he is "now 29 years old, has small children with whom he is involved in their lives and financially supports, and has considerable family support." (Concise Statement, CC# 2018-14713, p. 3). While the court did weigh those factors in its sentencing calculus, this court "was only obligated to consider mitigating circumstances, not to accept or appreciate them." Commonwealth v. Fullin, 892 A.2d 843, 850 (Pa. Super. 2006). Simply because mitigating factors were at play did not mean that this court was required to assign them more weight at the expense of other, more serious concerns that far outweighed any mitigating evidence.

31

Against this backdrop, the Defendant's sentencing scheme was not manifestly excessive or unreasonable. The court considered all of the relevant statutory factors in imposing sentence, and it did not consider one factor to the exclusion of others. Significantly, a defendant is not entitled to a concurrent sentencing scheme, and the Defendant in this case certainly was not deserving of a "volume discount" for committing serious crimes that were separate, distinct, and individually troubling. See Commonwealth v. Hoag, 665 A.2d 1212, 1214 (Pa. Super. 1995) ("The general rule in Pennsylvania is that in imposing a sentence the court has discretion to determine whether to make it concurrent with or consecutive to other sentences then being imposed or other sentences previously imposed."); Commonwealth v. Anderson, 650 A.2d 20, 22 (Pa. 1994) (raising a concern that defendants not be given "volume discounts" for multiple criminal acts that arose out of one larger criminal transaction).

Ultimately, the Defendant received standard range sentences at each case, and courts have recognized that "where a sentence is within the standard range of the guidelines, Pennsylvania law views the sentence as appropriate under the Sentencing Code." Commonwealth v. Lamonda, 52 A.3d 365, 372 (Pa. Super. 2012); See also Commonwealth v. Cruz-Centeno, 668 A.2d 536 (Pa. Super. 1995), appeal denied, 676 A.2d 1195 (Pa. 1996) (stating combination of PSI and standard range sentence, absent more,

32

cannot be considered excessive or unreasonable). Accordingly, for all of these reasons, this court respectfully requests that its sentencing scheme be upheld.

## III. CONCLUSION

The Defendant's allegations of error on appeal are without merit. Based on the foregoing, the Facebook pictures were properly authenticated. The evidence viewed in the light most favorable to the Commonwealth was sufficient to support the Defendant's convictions for Displaying Obscene Materials, Harassment, and Intimidation of Witnesses. The Defendant's challenge to the weight of the evidence was not properly preserved for appellate review, and the Defendant's aggregate sentence was within the standard range of the guidelines and was reasonable under the circumstances.

BY THE COURT:

_____, J.
BETH A. LAZZARA, JUDGE

_____
DATE 1/9/2020

33

BROOKS, Michael James

Victim Impact Statement:

      After several days of attempting to contact the victim in this case, Keshona Taylor phoned the investigator and was interviewed for the report. She noted that the defendant's actions have had a devastating affect on her life to date. Initially, she was forced to quit her job "out of embarrassment" over the pictures which were viewed by many of her co-workers. Additionally, her 10-year-old son viewed the pictures which forced them into counseling for a short time. She and her boyfriend "broke-up" over the photos/videos and she was finally forced into relocating due to the embarrassment and judgement of those around her and her son. The move cost her a total of $750 which she was forced to "come up with" to maintain her "sanity and piece of mind."

      When asked for a sentencing recommendation, Ms. Taylor believes that the defendant should be sentenced to a 2-3 year sentence and required to attend and complete anger management classes/therapy. "He needs anger management therapy because he does this kind of thing all the time." "He is a very angry man."

COURT
EXHIBIT "1"